McGuire, *Administrator*, v. Nugent *et al., Appellants.*

DIVISION ONE.

1   **Trust Relation:** PRESUMPTION. A trust relation will be presumed to continue, notwithstanding the death of the beneficiary, until the occurrence of some open and pronounced act of hostility thereto.

2.   **Trust:** ADVERSE POSSESSION : VESTING TITLE. Land was conveyed to A in trust for the grantor's daughter. The daughter married and died intestate, leaving no heirs, except her husband who repudiated the title thus descended to him and renounced the same in favor of A, the trustee, who was the grantor's sister and next of kin and who had remained in possession of the land from the first. The husband subsequently quitclaimed to B in trust to enable A to dispose of the property, B being the agent of the proposed buyer. The latter refused to complete the purchase and afterwards an action was brought by A claiming title by adverse possession against B and the husband and asking that the quitclaim deed be canceled and the title be vested in her. The husband in his answer confessed the averments of the petition and disclaimed all title to the premises. *Held* that B had no interest in the land except that of a trustee for a purpose which had failed, and that plaintiff was entitled to a decree.

3.   **Practice in Supreme Court:** NON-REVERSIBLE ERROR. A judgment will not be reversed because of errors which do not materially affect the merits of the action, nor because of errors of which appellant cannot complain.

Vol. 103—11

*Appeal from Buchanan Circuit Court.*—Hon. O. M. Spencer, Judge.

Affirmed.

*Woodson & Woodson* and *B. R. Vineyard* for appellants.

(1) When a wife dies without any children or their descendants, father, mother, brother, sister or their descendants, her surviving husband becomes her sole heir. R. S. 1889, sec. 4465; R. S. 1879, sec. 2161; G. S. 1865, p. 518, sec. 1. (2) The will of John K. Cunningham, the father of Nugent's wife, constituted Mrs. Martin, the plaintiff, a trustee for the testator's daughter, Mrs. Nugent, and named her as her guardian. Mrs. Martin testified that she took charge of the lot sued for "under the will," and "held that property under that will all the time." Being in possession as a trustee under an express and continuing trust, she could not claim adversely or assert title by limitation. *Goodwin v. Goodwin*, 69 Mo. 617; 2 Perry on Trusts, sec. 863, and authorities there cited. Besides counsel for plaintiff admitted in open court at the trial that the title to the lot was as charged in the answer, and that Mrs. Nugent owned the fee thereof at the date of her death. (3) The application by a trustee of the whole income of the trust property to his own use, for a period of years long beyond the time prescribed by statute for acquiring title by adverse possession, will not constitute such a disavowal of the trust relation as will start the statute of limitation to running. *Goodwin v. Goodwin*, 69 Mo. 617. (4) The defendant Nugent had made his deed for the lot in controversy to his codefendant, Coulter. The petition charges this fact. By making Nugent a defendant, when he had no interest whatever in the lot, the plaintiff could not recover on the answer of defendant Nugent; and the court erred in permitting

plaintiff to introduce evidence, as against Coulter, the real defendant, in support of Nugent's answer, and in refusing to strike out said answer, which had been filed just before the case was called for trial. A plaintiff is confined in his right of recovery to the cause of action set out in his petition. *Perry v. Barrett*, 18 Mo. 140; *Ensworth v. Barton*, 60 Mo. 511; *Eyerman v. Cem. Ass'n*, 61 Mo. 489; *Clements v. Yates*, 69 Mo. 623. (5) This case, in the court below, was tried on the theory that defendant Coulter by some deception had procured a conveyance of the lot in controversy from the defendant Nugent. There was no charge of fraud or deception in plaintiff's petition, and in the absence of such charge the plaintiff had no right to introduce evidence in support thereof. No relief can be awarded on the ground of fraud or deceit, "unless it is made a distinct allegation in the bill, so that it may be put in issue by the pleadings." *Hart v. Railroad*, 65 Mo. 510; Bliss on Code Pleadings, sec. 211; *James v. McKernan*, 6 Johns. 543; *Patton v. Taylor*, 7 How. 159.

*J. P. Grubb* and *Ryan & Macdonald* for respondent.

As between Peter Nugent and respondent, the trust having been terminated by the death of the *cestui que trust*, no fiduciary relations existed, and respondent was not prohibited by any principle of law or equity in setting up an adverse claim of title to the property against plaintiff. 2 Perry on Trusts [3 Ed.] sec. 920, p. 574; *Roberts v. Mosely*, 51 Mo. 282. The answer of defendant Nugent, and all of the evidence offered, shows conclusively that respondent claimed to own the property absolutely in her own right, and that she made this adverse claim from the date of the death of Mrs. Nugent continuously. (2) The answer of defendant Nugent, in so far as it admits the adverse holding of respondent, is responsive to the allegations of the bill, and is, therefore, relevant and material as evidence in the cause. 6 Am. and Eng. Encyc. of Law, p. 800, title, "Equity

Pleadings," and cases cited in note 3.   And it is further competent as an admission of defendant Nugent for the purpose of showing the character of his claim to the property, and of explaining how he came to execute the quitclaim deed which creates the cloud on respondent's title, and the intention with which it was executed. *Thomas v. Wheeler*, 47 Mo. 363 ; *Wilson v. Albert*, 89 Mo. 545.  (3) The deed from defendant Nugent to defendant Coulter vested in the latter, so far as the face of the record is concerned, a valid and legal title to the property in controversy ; and there being no defect apparent on the face of the proceedings in defendant Coulter's title, the deed constitutes such a cloud upon respondent's title as equity will always lend its aid to remove.   2 Am. and Eng. Encyc. of Law, p. 303, par. 6, and cases cited under note 1 ; *Clark v. Ins. Co.*, 52 Mo. 272; *Bank v. Evans*, 51 Mo. 335 ; *Harrington p. Utterback*, 57 Mo. 519 ; s. c., 54 Mo. 577 ; *Mason v. Black*, 87 Mo. 329 ; *Holthaus v. Zimmer*, 10 Mo. App. 592.   And one claiming title by limitation may maintain a bill in equity to remove the record title.   2 Am. and Eng. Encyc. of Law, p. 307, title, "Bill to Remove Clouds," par. 9 ; *Marston v. Rowe*, 39 Ala. 722 ; *Arrington v. Liscomb*, 34 Cal. 365 ; *Moody v. Holcomb*, 26 Texas, 714.   And, unless there has been a statutory abolition of the equitable remedy to remove a cloud, equity has jurisdiction even though there be also a legal remedy.   2 Am. and Eng. Encyc. of Law, p. 308, par. 15 ; *Harrington v. Utterback*, 57 Mo. 519.

SHERWOOD, P. J.— This proceeding to remove a cloud from the title to land was instituted April 14, 1887, by Margaret Martin, since deceased, and by consent her administrator's name substituted for hers.   The defendants are Peter Nugent and Herbert B. Coulter.

The petition, omitting the formal parts, is the following :

"Plaintiff for her cause of action states that she is the owner in fee and in the possession of the following real estate, situate in Buchanan county, state of Missouri, to-wit:    Lot 10 in block 36, original town of the city of St. Joseph, Missouri; and that plaintiff has had the uninterrupted possession of said real estate for the last twenty years, next before the filing of this petition, and that during all said time she had collected the rents from the same and paid the taxes on the same, and. has had open, notorious and adverse possession of said premises for the said time of twenty years, claiming all of said time to have the title and absolute ownership in said property.    Plaintiff further states that the defendant, Nugent, on and before the seventeenth day of March, 1887, claimed title and ownership in said property as legal heir of his deceased wife, ——— ——— Nugent, who, prior to the title acquired by this plaintiff, had the fee-simple title of said property, and the said defendant Nugent did, on the seventeenth day of March, 1887, execute and deliver a deed of quitclaim to the defendant Coulter, by which he conveyed to said Coulter all his interest in said real estate aforesaid, and the said defendant Coulter did, on the eighteenth day of March aforesaid, have said deed recorded in the land records of Buchanan county, book 133, page 505, and that said deed of quitclaim is a cloud on the title of plaintiff's property, injuring and preventing the sale of the same.

"Wherefore plaintiff asks that the court may, by its decree, cancel said quitclaim deed executed as aforesaid to the said defendant Coulter, by its proper decree to declare and vest the title of said property in plaintiff, and for all other decrees and relief that plaintiff may be entitled to under the pleadings and evidence."

The separate answer of Coulter admits the purchase of the property of Peter Nugent, as charged in the petition, stating that Nugent inherited the property from his wife, Mary Nugent, then deceased.

The source from which the title was derived is then set forth, showing that, in 1851, Cunningham and wife conveyed the property to Dinan as trustee for Mary Cunningham, their daughter; the trustee to convey the premises to whomsoever Cunningham and his wife should direct.  In 1855, his wife having died, Cunningham, by his will, appointed his sister, Margaret Martin, the guardian of his daughter Mary, and devised the property in question, as well as other property to his said sister, the concluding words of the will, which was duly probated, being as follows: "To have and to hold the same with all the appurtenances thereunto belonging, unto her, the said Margaret Martin, and her administrators, assigns and other legal representatives, for the sole use and benefit of my said child, Mary Cunningham, and it is furthermore my wish and will that, after she, the said Margaret Martin, has been properly and duly recognized and qualified as guardian of my said child, Mary, before and by the respective authorities, she, the said Margaret Martin, may forthwith at her option, dispose of all my said property or any part, as she may think fit and proper for the benefit of my said child, either by sale, lease, mortgage, deed of trust or otherwise, having all confidence in my said sister, Margaret, that any measures she will take will only be to the best of my said child.  All the said property, thus remaining under the control, management and supervision of my said sister, until my said child should become of age, and from that day to be and become vested in my said child in fee simple; that is to say, whatever may be left after the expenses and outlays for the education and bringing up of my said child.  To have and to hold the same unto her, said Mary Cunningham, her heirs and assigns forever."

The answer further states that Mary Cunningham was two years of age at the time the deed to Dinan was made; that afterwards she married Peter Nugent, codefendant, and about six years before suit, died intestate,

seized of the land in controversy, leaving surviving her neither child nor children nor their descendants ; father, mother, brother or sister, or their descendants ; that, in consequence, the fee-simple title in the land vested in said Peter Nugent, and his deed conveyed and vested his title in his codefendant Coulter.

The answer concludes by denying that Margaret Martin had been in adverse possession of the property, claiming it as her own, but alleging that her possession was that of trustee under the will of her father.

The separate answer of Peter Nugent is the following :

" Defendant Nugent, for his separate answer herein, admits that the plaintiff for more than ten years prior to the transactions stated in her petition, had possession of the premises in controversy, claiming title to, and absolute ownership of, the same, received the rents and profits thereof, paid the taxes thereon as she alleges, and has had the exclusive use and enjoyment of said premises ; all of which has been had and done adversely to any claim or interest this defendant might have in or to said premises, and with his knowledge and acquiescence.

This defendant admits that he made to defendant Coulter a deed of release or quitclaim for said premises about the seventeenth of March last, but he denies that the same was made in hostility to the plaintiff's title, or for the purpose of enabling said Coulter to assert any claim to said premises adverse to the plaintiff, and says that the same was made and delivered by him and was received and accepted by said Coulter in trust for plaintiff and to assist her in making a sale of said premises as hereinafter shown to the court.

This defendant says it may be then, as is alleged in the separate answer of defendant Coulter, that upon the death of this defendant's wife, who was seized of said premises in fee, this defendant had a better title to said premises than the plaintiff, who, but for this

defendant, would have been next of kin and sole heir at law of the defendant's wife.    But this defendant shows that, upon the death of said wife, the plaintiff claimed all her estate as heir at law, and this defendant, believing her right to be better than his, yielded up to the plaintiff the premises in controversy, along with his wife's estate ; that plaintiff immediately entered upon said premises and has ever since held the premises in the manner hereinbefore and in the plaintiff's petition stated ; that this defendant's wife departed this life in the year 1874, and plaintiff entered said premises as aforesaid immediately after her death and during said year 1874.

" This defendant further shows that, some time prior to said seventeenth of March last, the plaintiff desired to sell said premises and this defendant, at her request and in her behalf, solicited purchasers for the same.    A sale of said premises was bargained and agreed upon between plaintiff and one Stephen C. Woodson, for the price of $6,500, which was to be paid the plaintiff on showing satisfactory title and conveyance thereof ; that after examination of said title by said Woodson, the defendant Coulter came to this defendant and informed him that in order to perfect the title to said premises, or obviate defects in said title, it was necessary for this defendant to make a release or quitclaim, and this defendant thereupon gave the said Coulter the deed described in the petition, for the purpose, as this defendant understood and believed, of assisting the plaintiff in accomplishing a sale of said premises to said Woodson, and said transaction was so understood and intended by said Coulter, and was had for no other purpose whatever ; that the said Coulter was the agent of said Woodson in making said bargain with said Woodson and with plaintiff ; agent was engaged in making the trade between Woodson and plaintiff.

"The defendant further says that for said Coulter to assert any claim or interest in his own right in the premises in question under the instrument made to him by this defendant is a violation of the terms and conditions upon which the same was delivered to him, and a great fraud and wrong upon this defendant and the plaintiff. Defendant further says that he has never made any claim to said premises, and had never at the time his deed was made to said Coulter, and has no interest whatever in the same, and is willing and hereby consents to any proper judgment or decree protecting the title and rights of the plaintiff; and having fully answered prays to be dismissed with his costs."

This answer was not filed until June 2, 1887, the day on which the trial occurred, and just before it occurred, and defendant Coulter filed his motion to strike out all that portion of this answer occurring after the first paragraph, beginning with the words: "This defendant admits that he made to defendant Coulter a deed of release," etc., and ending with the words, "and a great fraud and wrong upon this defendant and plaintiff."

The grounds of this motion were as follows:

*First.* Because the same is inconsistent with the petition.

*Second.* Because it attempts to add to the petition a cause of action not stated in the petition.

*Third.* Because the matters therein stated are not material, pertinent or relevant to the allegations in the petition.

*Fourth.* Because it is an attempt on the part of Nugent to destroy the effect of his deed to Coulter in an indirect proceeding; and which is not attacked in the petition, either directly or indirectly.

*Fifth.* That the court has no power or jurisdiction to pass upon the issues presented by that part of the answer of Nugent in this case.

*Sixth.* That Nugent cannot defeat or question the effect of his deed to Coulter, in this proceeding, but must bring a separate action by himself for that purpose.

*Seventh.* That Nugent's answer is an attempted fraud upon Coulter, in colluding with plaintiff, and in bringing to this case issues which are not properly triable in this cause.

The defendant Coulter never saw, nor had any opportunity to see, said answer before it was read to the court on the trial thereof, and, upon the same being read, filed the motion aforesaid, which was then and there denied by the court. Coulter then objected to the introduction of any evidence, on the ground that the petition stated no facts sufficient to constitute a cause of action; but this objection did not prevail.

Counsel for plaintiff admitted at the trial that the general title to the property in dispute was, as stated in Nugent's answer, to-wit, that the title was in Mary Nugent at the time of her death, and that Peter Nugent was entitled to the property under the statutes of descents and distributions; but that he disclaimed any right at the time; and plaintiff claimed it as next of kin, and had it in adverse possession for more than ten years.

The testimony adduced will be sufficiently outlined in the opinion. The court found and decreed for the plaintiff. Defendant Coulter alone appealed from said decree.

The testimony in this cause shows very clearly that Margaret Martin, the former plaintiff herein, having taken possession of the property in litigation in execution of an express trust created by the will of her brother, in favor of his daughter, Mary Cunningham, afterwards Mary Nugent, such fiduciary relation towards the property would continue, and be presumed to continue, after Mary Nugent's death, until some very open, notorious and pronounced act in hostility to that fiduciary

relation should occur.  In the absence of any such pro-
nounced act, the mere possession of the premises by
trustee or former trustee would go for nothing, and
be deemed but a prolongation of the former fiduciary
relation.

There is no testimony of any such adverse holding
on the part of the trustee.  Her placid current of pos-
session continued to flow on as it did before ; for Mar-
garet Martin distinctly testified :  " I held that property
under the will all the time.  After her death I did not
pretend to make any different claim to the property
from what I had before her death."

The general tendency of the other testimony
adduced was to show that the quitclaim deed from
Nugent to Coulter was only intended to further the
sale and conveyance of the property by Margaret Martin
to S. C. Woodson, for whom Coulter was acting.

But though the deed to Woodson from Margaret
Martin was prepared and tendered to Woodson by Cul-
ligan, Margaret Martin's agent, yet he declined to accept
it, unless a concession of $500 was made, etc., and so
that proposed transfer to Woodson came to naught.
This being so it left Coulter in a situation in which it
would have been highly inequitable to have permitted
him to remain, to-wit, the mere conduit of a title which
his principal refused to receive, except on the perform-
ance of impossible conditions, and which title that
principal, therefore, virtually repudiated.  Was Coulter
to remain in that predicament ? if so, for how long ?

Again, it is clear that though Margaret Martin was
not entitled to the premises by reason of adverse pos-
session, yet it is equally clear that Peter Nugent, by his
solemn admission of record made in his answer, effectu-
ally estopped himself from ever asserting title in the
premises, as against Margaret Martin.

After Peter Nugent has thus estopped himself by
his pleading, Margaret Martin, being in possession of
the property had a better right thereto, than any other

party to this litigation, and was, therefore, entitled to the decree she obtained.

It is true some irregularities characterized the proceedings, but certainly no error was committed against the defendant Coulter materially affecting the merits of this action, or of which he could explain. R. S. 1889, secs. 2100, 2303 ; *Cartwright v. Culver*, 74 Mo., *loc. cit.* 183 ; *State v. Edwards*, 78 Mo., *loc. cit.* 478.

On no theory of the case could a decision have been made in his favor. He was simply the recipient of something which, considering the action of his principal, amounted to nothing more, at best, than a barren and repudiated trust. Consequently, he was not injured by the decree made. He had no rights to injure ; no standing in the lower court, and none here. Judgment affirmed. All concur.