# HOUGHTON et al. v. FRANCES PIERCE et al., Appellants.

### Division Two, May 14, 1907.

1. **EJECTMENT: Suit Against Landlord Alone.** Even though the plaintiffs in ejectment are shown to be the owners in equity of the land, they cannot recover possession if the suit is brought against the landlord alone and the evidence shows that a tenant who was not joined as a defendant was in possession at the time the suit was brought.

2. ———: **Possession by Trustee: Adverse to Beneficiary: Limitation.** Where a trustee, to whom has been conveyed land for the sole use and benefit of another, enters into possession without other title than that conferred by the trust deed, the presumption is that he took possession as trustee by virtue of the deed, and not adversely to the beneficiary. Thereafter his possession could become adverse to the beneficiary, or after her death to her heirs, only by some unequivocal act or acts brought home to her knowledge, or after her death to their knowledge, showing that he claimed the title in opposition to her or their title, or such an occupancy or user so open, notorious, and inconsistent with their rights that the law will authorize from such acts the presumption of such knowledge by them.

3. ———: ———: **By Trustee's Wife Under Deed of Trust: Mortgagee in Possession.** The owner of the land in 1865 conveyed it in trust for the sole use of the owner's wife, and the trustee at once entered into possession. The trust deed was made subject to a prior deed of trust to secure a note for $300, which was assigned by the payees by indorsement in blank, and this note was in possession of defendant, the trustee's wife, but the evidence does not show how or when she came into possession of it. The beneficiary of the trust deed died in 1872, and the trustee in 1899, and the trustee's wife claims title as assignee of the note and by adverse possession, but there is no evidence that she claimed possession adversely to her husband. *Held,* first, that possession by her cannot be considered adverse to her husband or to the beneficiary, without the most unequivocal assertion of claim of a separate estate hostile to both and brought home to their knowledge; *second,* as her husband, the trustee, took possession under the trust deed, the presumption is that her acts in receipting for the rents and paying the taxes were done in subordination to his legal title and right of possession, at least up to the time of his death in 1899; and,

*third,* assuming (what is not shown) that the trustee's wife took the note indorsed in blank in good faith, for value, before maturity and without notice, and that the indorsement was proved, the presumption is that the rents which the trustee permitted her to receive were so received and applied by her to pay off the note, it being the duty of the trustee to protect the beneficiary's estate and pay off the prior lien out of the rents and profits.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*Harry H. Haeussler* for appellants.

(1) The court erred in declaring the law to be that "before the mere production of a note will make prima-facie proof of ownership, the indorsements of the payees must be shown by evidence." Keim v. Vette, 167 Mo. 399; Ashbrook v. Letcher, 41 Mo. App. 371; Johnson v. McMurry, 72 Mo. 282; Reinhard v. Dorsey Coal Co., 25 Mo. 353. (2) The court erred in finding the fact and declaring the law to be "Mrs. Pierce's possession was her husband's possession. He was entitled to possession of her property during coverture." Hart v. Leete, 104 Mo. 329; Clark v. Clark, 86 Mo. 122; De-Hatre v. DeHatre, 50 Mo. App. 1.

*D. C. Taylor* for respondents.

(1) The Statute of Limitations did not run against plaintiffs. Rodney v. McLaughlin, 97 Mo. 431; 1 Am. and Eng. Ency. Law, 241, 250, 264. (2) Defendants, by their answer, threw the case on the equity side of the court. Laws 1897, p. 74; Meyers v. Schuchmann, 182 Mo. 159. (3) There is no sufficient evidence that Frances Pierce is the owner, for a valuable consideration, of the note and deed of trust under which she now pretends to claim as a "mortgagee in possession," and before she would be entitled to claim as such, she must

prove that she is the owner of the note secured by the deed of trust, that it was endorsed to her. Bank v. Donnell, 35 Mo. 373; Bank v. Pennington, 42 Mo. App. 355; Hugumin Co. v. Hinds, 97 Mo. App. 352; Dunlap v. Kelley, 105 Mo. App. 4.

GANTT, J.—In September, 1903, the plaintiffs brought their action in ejectment in the circuit court of St. Louis county, for a tract of land situated in said county, described as a tract of land containing twenty and ten one-hundredths acres, in U. S. Survey No. 3116, township 44 north, range 5 east, it being lot No. 32 of a subdivision of said survey, made April 30, 1845, a plat of which subdivision is of record in Plat Book No. 1, vol. 2, page 61, in the office of the recorder of deeds for the city of St. Louis, Missouri. Ouster was laid as on the — day of ——, 1898. Judgment was prayed for possession of said premises, with damages to the amount of five hundred dollars, and twenty-five dollars for the monthly rents and profits.

The answer of the defendants, Lucy, Cora and Della Pierce and Frances and Allen Pomroy, was a general denial. The answer of Frances Pierce was first a general denial and secondly a plea of the ten-year Statute of Limitations, and then by way of further defense, she pleaded that she was the owner of the said real estate, and that the plaintiffs have now come and by their petition claim some title or estate in said real estate as above described, and she prayed the court to ascertain, determine and adjudge her title and interest in and to said real estate, and that her title be quieted.

For reply the plaintiffs deny all the new matter therein pleaded.

The cause was tried to the court without a jury.

On the part of the plaintiffs, the evidence was as follows: First, it was admitted that the common source of title is a deed from Felix G. Dunnavant and wife to

Levi W. Cline, dated July 26, 1864, and recorded in book 310, page 272, of the recorder of deeds of the city of St. Louis, and it is further admitted that a John Pierce was the husband of Fanny Pierce, and that he died January 21, 1899. Plaintiff then introduced and read in evidence a certified copy of a deed from Levi W. Cline to John Pierce, trustee for Jane Elizabeth Cline, dated the 23rd day of December, 1865, recorded in book 310, page 274, of the recorder's office of the city of St. Louis, conveying the following described property situate in Carondelet township, St. Louis county, to-wit: Lot number thirty-two of the subdivision of United States survey No. 3116, on the Meramec river near the Fenton bridge, beginning at a point the common corner of lots 17, 18, 19 and 20, thence south 28 degrees east with line between lot 17 and 20, fifteen and eight one-hundredths chains to corner of lots 16, 17, 20 and 21; thence south 52 degrees west with north line of lots 20, 29 and 32 forty and thirty-four one-hundredths chains to Meramec river; thence up said river to southwest corner fractional lot 30; thence north 52 degrees east twenty-one and ninety-seven one-hundredths chains to the beginning. Containing twenty acres and ten one-hundredths more or less. And a certain lot of personal property consisting of horses, cows, hogs, chickens and household and kitchen furniture on the said premises. "The above-described real estate is hereby conveyed subject to a deed of trust of even date herewith given by said first party to Voullaire and Jordan to secure the payment of a note therein described. To have and to hold the same with all the rights, immunities, privileges and appurtenances thereunto belonging unto the said party of the second part and his heirs and assigns forever. This deed is made to said second party in trust for the sole use and benefit of said Jane Elizabeth Cline, wife of said first party, to be by her held, used and enjoyed together with the rents

and profits thereof separate and apart from her husband with full power to sell and convey the same or in anywise dispose of the same as she shall request and direct in writing.''

William Houghton, one of the plaintiffs, testified that he was forty-six years old, and was the son of Jane E. Cline, who had married Levi W. Cline after the death of his (Houghton's) father; that he never had seen Cline and knew nothing of his death; that later his mother married one James Abner in Edwardsville, Illinois, and by this Abner had two children, Jennie, who died when nine months old, and Sallie, about whom he testified as follows: Q. What became of Sallie? A. Henry Sutter took her to raise and moved to Mt. Pleasant, Texas, and I lost track of her. Q. That is Sallie Abner? A. Yes, sir. Q. What is her name now? A. Sallie Reese. Q. When did you last see her? A. In 1897, nine years ago, and I saw her last month again on the 30th of October, she was here in Clayton then, she and her husband. Q. You recognized her when you saw her? A. Yes, sir. Q. You recognized her and knew her to be a child of your mother? A. Yes, sir, she has her resemblance. My mother died in 1872 in Edwardsville, Illinois, she was a half sister of Mrs. Fanny Pierce, whose husband was John Pierce, the same man to whom this property was transferred in trust for my mother. John Pierce took possession of the said property belonging to my mother. I did not know of any writing in regard to it. I did not return to the place here until in June, during all of which time I lived in Illinois, and had not seen my sister Sallie since she left Edwardsville when a little child, until she came to Clayton. At the time John Pierce took possession he was in the fire department in St. Louis, and lived on Barrett street. He was not a farmer.

On cross-examination he stated that John Pierce took possession of the land after we left in 1866, when

plaintiff was nine years old. We left the place and went to Venice, Illinois, mother and I, and lived there all the time until mother died in Edwardsville. Mother married Abner while I was working for Mr. Mackey, and she sent my step-father to get me. I was living with her when the step-children were born, and when the one died. I do not know how the property was transferred to Pierce, nor how he took possession. Do not think that he went to live on the place. Since we moved from the land I did not go to see it or make any inquiries about it until this year. I visited the Pierces once and was ordered away and never visited them again. He stated that the first time he had seen the property since was in June of the year of the trial. Asked what induced him to come back, he answered, ''I went to see — they always claimed that I owed $600. They never would give me possession until I raised it, and I couldn't do that and I came out here to see if there was anything coming to me, if not, I was satisfied.'' Fanny Pierce told him that he owed them $600 when he was a boy fifteen years old; that was when he went to see them and she told him not to darken her door any more. He saw Mr. Pierce, but the latter never talked to him on the subject. John Pierce took possession of what we left, the land and the personal property. He came out there and took the stock, I saw him riding the horses in; one of the horses belonged to plaintiff's mother.

William Stafford testified that he had lived in the county except for an interval of two years, since 1865. He knew Levi W. and Jane Elizabeth Cline, who lived on the land in dispute. He knew John Pierce who was a brother-in-law of Jane Cline and had seen him on the place. He saw the plaintiff several times and recognized him as the boy who claimed to be the son of Mrs. Cline. He further testified, he knew old man Cline, because about 1864, witness prosecuted him for horse

stealing, and he was convicted and sent to the penitentiary; after this in 1865, witness went west and lost track of the Clines; they were gone when he got back two years later. He had promised to look up this property for plaintiff Houghton, and he promised to pay him something. Witness went security for costs for him in this case. Witness did not know Sallie Reese, nor anything about the transfer from Cline to Pierce. There had been several tenants on the property. Witness's brother-in-law rented it at the time witness came back from the west. Witness's mother died in the house on the place. The property was always spoken of to me as "The old Cline place." Houghton, the plaintiff, had told witness six or eight years ago, that he thought he had rights there, but the Pierces said they would deliver the property to him if he would pay them six hundred dollars, or seven hundred dollars, and that was the reason he supposed that the Pierces had possession of the property. The marriage license issued to James D. Reese and Sallie Abner, dated the 12th of November, 1891, was offered in evidence.

Edward Weidlich and Julius Weidlich testified that their father rented the land for sixteen years, and after him Julius Weidlich rented it. They paid the rent to Mrs. Pierce, Mr. Pierce himself never saying anything about it. Sometimes the receipts for the rent were signed by the daughters of Mrs. Pierce. For the past six years the land had been rented to one Longhibler. It was worth about fifty dollars per year rent. The receipts for rent were offered in evidence; one reads as follows:

"Received, St. Louis, January 8, '81, from Edward Weidlich twenty-five dollars on account of rent for Elizabeth Cline's place in St. Louis county. John Pierce, By William Downing, Agent."

Another receipt reads:

sum of twenty-five dollars, the same being the rent for farm known as the Jane Elizabeth Cline place, beginning March 1, and ending September 1, '82.  Mrs. John B. Pierce.''

The other receipts are practically in the same form and included the time until March, 1886.  This was substantially the evidence for the plaintiffs.

Defendant then introduced and read in evidence a deed of trust executed by Levi W. Cline and Jane Elizabeth Cline to Leicester Babcock as trustee, for Seymour Voullaire and Lewis S. Jordan, dated and acknowledged December 23, 1865, and recorded December 23, 1865, in the recorder's office of St. Louis county in book 310, page 273, conveying the property in dispute in trust for the following purposes: ''Whereas, Levi W. Cline is justly indebted unto said parties in the third part in the sum of three hundred dollars, and to secure the payment of said sum, has this day executed his negotiable promissory note for said sum of three hundred dollars bearing even date with this deed and payable three months after date thereof to the order of said parties of the third part, at the Bank of the State of Missouri, and bearing interest at the rate of ten per cent per annum from maturity.''  Defendant also introduced in evidence a note with indorsements in words and figures as follows:

''$300.00.

St. Louis, December 23, 1865.

This note secured by deed of trust.

Three months after date, I promise to pay to the order of Seymour Voullaire and Lewis S. Jordan three hundred dollars, for value received, negotiable and payable without defalcation or discount, with interest at the rate of ten per cent per annum from maturity, at the Bank of the State of Missouri.

''LEVI W. CLINE.''

Endorsements: "Without recourse on me in any event. Seymour Voullaire". and: "Without recourse on me in any event. Lewis S. Jordan."

To the introduction of this deed of trust and note, the plaintiffs objected on the ground that it was incompetent and irrelevant to show title in Mrs. Pierce. It does not appear that the deed of trust has ever been foreclosed. She may be the legal holder of that note for value, but that would not give her any title or even color of title. Which objection was overruled and exception saved.

Henry Longhibler, witness for defendant, testified that he and his wife had gone to town and rented the place in the name of Mrs. Longhibler; that they dealt entirely with Mrs. Fanny Pierce, that he never saw John Pierce. My wife always went into town after that to pay the rent. I still rent the place and pay fifty dollars per year for it. There is no building on the land, and Mrs. Pierce never lived on it.

Mrs. Longhibler testified that all the transactions were had with Mrs. Pierce and they never spoke to Mr. Pierce. She had lived in that section all her life and never saw John Pierce on the place or near there. I remember Mrs. Cline very well, the last time I saw her was in the sixties. Mrs. Pierce leased the land to us for five years with the privilege to buy.

Peter Weber, who resided near the land for twenty-three years, testified that he was at one time road overseer for the district, and went to see Mrs. Pierce on account of the road about eleven years ago, under the instructions of the court to see the owners of the land. He spoke to Mrs. Pierce who said she would be satisfied if she got the value of the land.

Lucy Pierce testified she was a daughter of Fannie and John Pierce. Her father died January 21, 1899, for many years she had charge of the land for her

mother. Her father was never present when the rent was paid. The tenants did not pay their rent. Mr. Stafford's relatives rented and left without paying. In 1880, the Weidlichs took possession and paid their rent when they could pay, part in fruit and vegetables. In 1898, the Longhiblers took possession and are the present tenants. The receipts produced were written or signed by her sister or herself, only one being signed by William Downing, who acted as agent to compel the first tenants to pay their rent. William Houghton, the plaintiff, came to see us in 1871, when he told us his mother was dead. My mother sheltered him and gave him clothes, and he took me to a circus. I have not seen him since until this spring, when he told me my father said he could have the land by paying three hundred dollars that my mother had advanced to him. My mother has been in very poor health for four or five years. We paid the taxes on the property by sending the money by mail to the collector and received the receipts. Did not know there was such a person as Sallie Reese until this spring, when Will Houghton told me he had a half sister, but did not know her name. I do not remember having ever seen Mrs. Cline. I never heard my father say he was trustee of the property, but he always said the money belonged to mother. Mrs. Cline was mother's half sister.

At the close of the evidence the court gave the following declarations of law:

"The court instructs the jury that if they believe from the evidence that the defendant was in the actual, open, notorious and continued adverse possession of the land in controversy for at least ten years before the institution of this suit, claiming to be the owner thereof, then they will find their verdict for the defendant.

"The court instructs the jury that the possession of a tenant is not such a possession of the landlord as will enable a plaintiff in ejectment to recover against

such landlord as a sole defendant, and if the court finds
from the evidence in this case that at the time of the
institution of this suit, defendant had a tenant in actual
possession of the premises and that he, the defendant,
was not in the actual possession of the premises, the
judgment should be for the defendant.''

The court then refused the following declarations
of law requested by the defendant:

''The court instructs the jury that a beneficiary in
a deed of trust in possession, who for the period of lim-
itation refuses to recognize the existence of the deed of
trust or any claim of the maker thereof, may stand upon
such adverse claim and invoke the Statute of Limita-
tions against the maker of said deed or any person
claiming under him, and, if they believe from the evi-
dence that the defendant, Fannie Pierce, was in posses-
sion, as beneficiary in the deed of trust made and exe-
cuted by Levi W. Cline and Jane E. Cline, his wife, for
a period of more than ten years, refusing to recognize
the existence of such deed of trust, or any claim of the
makers thereof, or any person claiming under them,
then they will find their verdict for defendant Fannie
Pierce.

''The court instructs the jury that a beneficiary in
a deed of trust or his assignee in possession of land
under the deed of trust, which has become forfeited by
the default of the debtor and maker of the deed, may
protect his possession by virtue of his title under the
deed of trust, and if the jury believe from the
evidence that the defendant herein, Fannie Pierce,
the assignee of the beneficiary in the deed of
trust given by Levi W. Cline and his wife, Jane
Elizabeth Cline, is in possession of the land
under said deed of trust which has become for-
feited by default of the debtor, then they will find for
the defendant, Fannie Pierce.''

To the refusal of the court to give these declarations of law, the defendant duly excepted at the time.

The court found from the evidence that Longhibler was at the commencement of the suit, and still is, in possession of the land sued for as tenant of Mrs. Frances Pierce, and hence plaintiffs cannot recover possession, and the judgment must be for the defendant on the cause of action in ejectment with costs upon that cause of action. On the counter-claim for a decree for title in favor of Mrs. Pierce, the court found for the plaintiff and held that Mrs. Frances Pierce had no title to the property and that plaintiffs have the title to said land as against the defendant Frances Pierce, and awarded costs to the plaintiffs on that branch of the case. From this judgment and decree vesting title in the plaintiffs, the defendant Fanny Pierce appealed to this court.

I. At the threshold of the discussion of the respective propositions advanced by counsel, it may as well be stated that we shall proceed on the basis that the testimony abundantly establishes that the John Pierce mentioned in the oral evidence is the same John Pierce to whom Levi W. Cline and Jane Elizabeth Cline conveyed the land in controversy on December 23, 1865, and that Mrs. Fannie Pierce is one and the same with the Mrs. Frances Pierce mentioned in the evidence. In so doing we are are not called upon to rely merely upon the presumption of identity of person from the identity of name. The facts disclosed that the John Pierce to whom the lands were conveyed in trust was the brother-in-law of Mrs. Jane Elizabeth Cline, and that he took possession of the trust estate under the deed, and this same John Pierce was the husband of Mrs. Frances Pierce or Fannie Pierce as she is known throughout the testimony. The attempted distinction between John Pierce, the grantee and trustee in the deed, and John

Pierce, the husband of Mrs. Fannie Pierce and father of the other defendant, is a mere play upon words. The identity of John Pierce, trustee in the deed, and John Pierce, the husband of Fannie Pierce, was too conclusively established to admit of a doubt, and the circuit court was right in basing his judgment upon that assumption. Starting then with the common source of title, to-wit, Felix G. Dunnavant, it is admitted that Dunnavant and wife by warranty deed conveyed the land in dispute to Levi W. Cline, July 26, 1864, and that Levi W. Cline conveyed the said land to John Pierce on the 23rd of December, 1865, in trust for the sole and separate use and benefit of Jane Elizabeth Cline, with power in said trustee to sell and convey the same or in anywise dispose of the same as said Jane E. Cline should request and direct in writing, which deed was duly recorded in the office of the recorder of deeds of St. Louis, on the same day. Under this deed John Pierce took possession of the land in controversy, and as late as January 8th, 1881, gave a receipt for the rent thereof in the following form:

"Received, St. Louis, January 8, '81, from Edward Weidlich twenty-five dollars on account of rent for Elizabeth Cline's place in St. Louis county.

"John Pierce,
by William Downing, Agent."

The parol evidence tended to show that Levi Cline was convicted and sentenced to the penitentiary. Whether said Cline died, or Mrs. Cline was divorced from him, does not appear from the testimony save by inference from the fact that she afterwards married James Abner and of this last marriage one of the plaintiffs, Sallie Reese, was born. Mrs. Cline died in Edwardsville, Illinois, in 1872, leaving the two plaintiffs, William Houghton and Sallie Reese, her only heirs at law. The record is silent as to whether Abner died or

is still living.   There was also testimony that the plaintiff Houghton visited John Pierce in his lifetime in St. Louis, and was told by Mrs. Pierce that he owed them $600, and possession would not be given him until he paid that amount, and that plaintiff, Houghton, at that time was about fifteen years of age and was not able to pay $600.   There is no evidence in the case that John Pierce ever made any claim of title to the land in suit adverse to the plaintiffs or their mother up to the time of his death in 1899, but the land was rented to various tenants and receipts given for the same in his name and in that of his wife, Mrs. Fannie Pierce.  Prior to the execution of the deed conveying the land in trust to John Pierce, and on the same day a deed of trust was executed by Levi W. Cline to Seymour Voullaire and Lewis Jordan for $300.   This deed of trust does not appear to have ever been foreclosed, but the note was introduced in evidence with two endorsements thereon by Voullaire and Jordan without recourse on them. How this note came into the possession of Mrs. Pierce or whether she purchased the same from Voullaire and Jordan or received the same from her husband, John Pierce, does not appear.  John Pierce never made any conveyance of the land in his lifetime, nor does it appear that Mrs. Cline or Mrs. Abner ever attempted to convey the same or requested John Pierce to do so in writing.  So far then as the legal title appears from this record it was in John Pierce at the time of his death in 1899, in trust for Mrs. Jane Elizabeth Cline, and at the death of said John Pierce, the legal title thereto descended to his children and heirs at law, Lucy, Cora and Della Pierce and Frances and Allen Pomroy, and they disclaim any title whatever in the premises.   The evidence further tended to prove that the property has at all times been assessed in the name of Jane Elizabeth Cline, and the taxes have been paid by Mrs. Pierce.

The defendant Mrs. Fannie Pierce asserts title to the land in dispute by virtue of adverse possession.

As the evidence in the case showed that one Longhibler was in the possession of the land at the time of the commencement of the suit, the circuit court very properly adjudged that plaintiffs could not recover possession in ejectment as Longhibler was not made a party to the action, even though they were shown to be the owners thereof in equity.

The controlling question presented on this appeal is, whether Mrs. Fanny Pierce was entitled to a judgment decreeing the title to her under her cross-bill asserting title thereof by virtue of her adverse possession. Inasmuch as John Pierce entered into possession of the property in 1865, without other title than that conferred upon him by the deed conveying the same to him in trust for Mrs. Cline, the presumption is that he took possession thereof as trustee by virtue of said deed and not adversely to Mrs. Cline. Under such circumstances his possession could not become adverse to Mrs. Cline and her heirs without some unequivocal act or acts brought home to the knowledge of Mrs. Cline in her lifetime or her heirs after her death, showing that he claimed title thereto in opposition to her or their title, or such an occupancy and user so open and notorious and inconsistent with their rights that the law will authorize from such facts the presumption of such knowledge by them. [Hunnewell v. Burchett, 152 Mo. l. c. 614.]

A careful scrutiny of the testimony in this case does not show that John Pierce's possession was ever changed to an adverse holding in repudiation of Mrs. Cline's right. Nor does the defendant, Mrs. Fanny Pierce, apparently make any such claim, but her insistence is, as evidenced by the declarations of law which she requested the court to give, and by the argument of

her counsel in this court, that she took possession of said land in satisfaction of the note and deed of trust given by Levi W. Cline and wife to Voullaire and Jordan to secure the note of Cline to them, of which said note she claims, or rather her counsel does, to be the assignee or indorsee. But Mrs. Pierce did not testify in this cause, and there is no evidence save possession that she is the owner for value of the Voullaire note and deed of trust, nor when, nor how, she came into possession thereof, nor is there any evidence tending to show that she claimed possession of the property adversely to her husband, John Pierce; on the contrary, as the possession was in him, every presumption must be that her acts in receipting for the rents and paying the taxes were done in subordination to his legal title and right of possession, at least up to the time of his death in 1899, and subsequent adverse possession by her would not confer title by the Statute of Limitations. Whatever possession she had prior to his death prima-facie would be her husband's possession, as he was entitled to the possession of her property during coverture; as said by the circuit court, "Possession by the wife of a trustee could not be considered adverse to her husband, or to his *cestui que trust,* without the most unequivocal assertion of claim of a separate estate, hostile to both and brought home to their knowledge." But Mrs. Pierce invokes the rule that the holder of a negotiable note indorsed in blank by the payee is prima-facie the owner of it, and is presumed to have taken it in good faith for value before maturity and without notice, as has been held by this court in Fitzgerald v. Barker, 85 Mo. 13; Mayes v. Robinson, 93 Mo. l. c. 122; Horton v. Bayne, 52 Mo. 531; Keim v. Vette, 167 Mo. l. c. 399. A reference to all of those cases will show that the indorsements in each were either admitted or proven. In this case, there was no evidence whatever as to the genuineness of the indorsements of Voullaire and Jordan, the

payees of the note, but without resting our opinion on the necessity of the proof of the indorsements, we do not think the facts of this case raise a presumption that Mrs. Pierce acquired this note and deed of trust in the due course of business before maturity; on the contrary, we think a much stronger presumption arises that as John Pierce was the trustee of Mrs. Cline, and as such was in possession of her separate real estate, it was his duty to protect her said estate and pay off the prior lien of Voullaire and Jordan out of the rents and profits derived from said estate, and when this note and deed of trust were offered in evidence by his widow the natural and reasonable presumption is that John Pierce, out of the rents which it was shown went to him and his family from the land in suit, had applied them to the satisfaction of this prior note and deed of trust. This presumption accords with his duty as trustee, and also with the legal presumption that whatever possession his wife had of the note and deed of trust was in law his possession, and that she held the same in subordination to his right of possession. We have already adverted to the fact that Mrs. Pierce did not testify in this case, and there is absolutely no evidence as to when she acquired possession of the note, or how she acquired it or out of what funds she paid for it, if she in fact did buy it, and there is an utter absence of any evidence showing or tending to show that she had any estate out of which she could have raised the money to purchase said note. There is nothing but the naked unexplained possession of the note and deed of trust by her years after the death of her husband, who was the trustee of her sister, to build up a presumption of an adverse holding against the heirs of her sister, the *cestui que trust* of her husband. The burden was upon her to establish an adverse, open, notorious possession in order to defeat the title of the plaintiffs, and we are of the opinion that the circuit court correctly held and

found that she did not sustain the burden, which was assumed by her claim of title by adverse possession, and accordingly the judgment of the circuit court decreeing the title in the plaintiffs is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.