682

Benjamin MAIRS, Jr., and Sarah Ann
Suetter, Appellants,

v.

Stillman KNIFONG, Respondent.

No. KCD 28740.

Missouri Court of Appeals,
Kansas City District.

Oct. 11, 1977.

C. B. Burns, Jr., Brookfield, for appellants.

Robert DeVoy, Brookfield, for respondent.

Before SWOFFORD, P. J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

Respondent was successful in defending a quiet title suit upon the theory, as found by the trial court, that appellants were estopped to deny respondent's title after having received benefits from the sale of the real estate in an estate of their ancestor, and that appellants were bound by the estoppel of their ancestors. Appellants claimed the title to a one-half interest in this real estate, located in Linn County, Missouri:

> The North 55 acres of the west half of the Southeast Quarter, and the North 15 acres of the Southeast Quarter of the Southeast Quarter, of Section 21; the Southwest Quarter of the Northwest Quarter, the Northwest Quarter of the Southwest Quarter, and the North 15 acres of the Southwest Quarter of the Southwest Quarter of Section 22, all in Township 60 of Range 20.

The issues are whether, under the facts and the law, the trial court erred in holding appellants were estopped, and alternatively, as urged by respondent, whether he acquired title to the land by adverse possession.

The common source of title to the above described property (165 acres) was James A. Mairs and Emma L. Curtis, who acquired the property as tenants in common in 1909. On January 24, 1929, Emma gave a deed of trust on her undivided one-half interest in the property which was foreclosed on April 8, 1932, and by trustees deed therein, one Chester Bagley acquired her title. On December 12, 1932, Bagley and wife conveyed the one-half interest to Sarah A. Mairs.

James A. Mairs died in 1922, and by his will left a life estate in his real estate to his wife, Sarah A. Mairs, with remainder in equal parts to his son, Benjamin Mairs, and to his granddaughter, Frances S. Harrington, or to the survivor of them, in trust to Benjamin until he reached age 25, and as to Frances until she should marry "and have a child which shall arrive at the age of three years." If Benjamin was to die without issue before he attained age 25, his interest was to go to Frances, subject to her marriage and having a child who attained three years of age. In the event of the deaths of both Benjamin and Frances without issue, the property was to go to the heirs of James' brother, Joseph W. Mairs. James' will provided that the probate court appoint a trustee for Benjamin and Frances, but the record here fails to show an appointment of a trustee by any court under the will, even after the termination of Sarah's life estate. James' will did not grant a power of sale of the trust property.

Sarah A. Mairs died in 1934. By her 1933 will, she gave all of her estate to R. C. Mullins as trustee for the income benefit of her son, Ben A. Mairs, and her granddaughter, Frances Harrington Smith, for their lifetimes, or to the survivor for life. By Article Fourth of the will, the trustee was given full power of sale of all property, to

reinvest the same and to pay the income to the two beneficiaries, who were restricted in alienation of their interests or anticipation of the income by a spendthrift provision. Upon the death of the beneficiaries, the property was to go to their issue, or if none, to nephews and nieces. The entire 165 acres was inventoried in the estate of Sarah A. Mairs, deceased.

On June 29, 1937, Ben A. Mairs and wife gave a deed of trust on the 165 acres, securing a note for $150.00 to "Roscoe C. Mullins, as executor of the estate of Sarah A. Mairs, deceased." The record does not show whether this deed of trust was foreclosed, but it is listed in the inventory in Sarah's estate as an asset.

It is conceded in the briefs of the parties that Ben Mairs, Sr., died in 1966. A certified copy of the death certificate of Frances Sarah Martin shows that she died June 24, 1964. Other evidence showed that she was the same person as Frances S. Harrington (and Smith) named in the wills of James A. and Sarah A. Mairs. On September 22, 1938, Frances H. Sanders and husband gave a warranty deed to Roscoe C. Mullins, Trustee of the estate of Sarah A. Mairs, deceased, covering an undivided one-fourth interest in the 165 acres. There was, however, no showing that Frances H. Sanders was the same person who was named in the Mairs' wills. There is also no evidence that Frances S. Harrington died without having a child then three years old, but she did predecease Ben Mairs, Sr.

At the time of Sarah's death in 1934, she owned a one-half interest in fee simple in the 165 acres by reason of the 1932 deed from Bagley to her. Her life estate in James' real estate then terminated. The one-half fee interest of James, owned by him at the time of his death, was either then vested in his trustee, or one-fourth thereof in Benjamin if he had then attained 25 years of age, and the other one-fourth interest in Frances, if she had married and had a child of three years of age.

No trustee, however, was ever appointed to administer the trust estate of James A. Mairs after Sarah's death in 1934. She,

however, appointed R. C. Mullins, as trustee, with full power of sale, by her will. Mullins proceeded to inventory the entire 165 acres on March 18, 1935, in the probate court, made final settlement and was discharged as executor therein on July 9, 1952. Apparently, Mullins acted as trustee until June 23, 1952, when the circuit court accepted his resignation and upon the request of Ben A. Mairs, appointed L. L. Ingraham as trustee in the Sarah A. Mairs estate. Ingraham, on April 2, 1953, applied for a declaratory judgment defining the rights of beneficiaries of Sarah's trust, it being alleged that Ben A. Mairs had received $9,359.72 and Frances Harrington Smith (then Martin) had received $4,956.52 from the former trustee, who also had paid Ben's ex-wife, Anna, $3,572.62 child support, which the trustee asked to be charged against Ben's interests. On February 3, 1954, upon the court's docket sheet, is the finding that Ben A. Mairs had received $10,255.34, and Frances $5,842.54, and that Frances was entitled to $4,412.80 before Ben received any further payments. In this proceeding, Frances joined in the prayer and asked that no further payments be made to Ben from income "and/or the proceeds from the near future sale" until the beneficiaries were equalized. The trustee made annual reports thereafter, paying to Frances about $175.00, until she, on August 23, 1956, moved the court to order the trustee to sell the trust property, distribute the proceeds and to terminate the trust, which motion she renewed in subsequent trust reports. It should be noted that the Sarah Mairs trust consisted of several tracts of real estate other than the one-half interest in the 165 acres.

On December 12, 1962, trustee Ingraham applied to the court for an order authorizing the sale on the ground that the real estate was not profitable. Included in the application was the description of the entire 165 acres. On January 8, 1963, the court, by order, authorized the sale of the same land. A trustee's deed was executed and delivered to respondent on March 9, 1963. This trust deed omits the description of the

40 acres, the Southwest Quarter of the Northwest Quarter of Section 22, Township 60, Range 20 (or misdescribes it as the Southwest Quarter of the Southwest Quarter of that section, which was not in the chain of title of either James' or Sarah's estates).

What is here present is that R. C. Mullins and his successor, L. L. Ingraham, assuming to act without appointment, right or authority as trustees in the James A. Mairs trust, took charge of the one-half interest of fee land in that trust. Their designations and appointments as trustees were only in the Sarah A. Mairs estate. The error of that assumption came about, undoubtedly, from the fact that Sarah had a life estate in James' one-half interest for some 12 years, which along with her own one-half interest in fee, she devised in fee, both of which interests she had legitimately assumed full control during her lifetime.

Ben's interest in the James A. Mairs trust would have become vested upon his becoming 25 years of age, which could have been no later than in 1947. Frances' interest could not vest until she married (which she did) and had a child which attained 3 years of age. If she died without the happening of the latter event, which is apparently the fact here, her interest would have (and apparently was) vested in Ben.

■ Under the facts here, Ingraham's deed as trustee was ineffective to convey title to the one-half interest in the 165 acres which was in the James A. Mairs trust, Ingraham being without authority to act therein, because of lack of appointment by the court as trustee, and importantly, the lack of authority by a court order to sell the property, the James A. Mairs will granting no power of sale of the real estate to any trustee.

■ The James A. Mairs will was recorded, according to the abstract of title in evidence, on April 26, 1973, in Book 233 at page 164, in the Recorder's office of Linn County, Missouri. The will was also probated in the Probate Court of Linn County, Missouri. In *Mizell v. Osmon*, 354 Mo. 321, 189 S.W.2d 306, 310[1] (1945), the court in considering the effect of the predecessor statute to § 474.500, RSMo 1969 (L.1955, p. 385, § 268A) [which requires wills devising lands to be recorded], said, "And it has been held, in effect, that a will recorded in the recorder's office imparts notice without reference to said statute. (Citing cases.)" In *Mizell*, the will devised a life estate only to testatrix's heirs, which will was not recorded in the recorder's office. Defendant claimed title by deeds of a fee from the heirs. As to this, the court further said, p. 311[3, 4], " * * * [H]er will was duly probated and recorded in the records of the probate court. Those attempting to purchase from the heirs of the testatrix were bound to know that the deceased owner could have made a will (citing statute); that, if there was such a will, it would be probated and recorded in the probate court of the county of deceased's residence or in the county where the land was located (citing statute and case); that the heirs of the deceased record owner would acquire no title by descent, unless such owner 'died intestate as to such estate,' * * * and that any apparent interest of the heirs at law (as such) would cease upon the probate of a will." See also 3 Maus, Probate Law and Practice, § 227, p. 209, as to the notice imparted by the recordation of the will. Under the facts here, respondent could not have been a bona fide purchaser for value of the James A. Mairs trust interest. "One taking a transfer or encumbrance of trust property or funds does not act in good faith, and has constructive notice of a breach of the trust involved in such transfer or encumbrance, where he has failed to exercise such duty of inquiry with respect thereto as the law casts upon him under the circumstances. He must, where he has knowledge of a fact sufficient to put him on inquiry as to the terms and conditions of the trust and *the authority of the trustee*, make such an inquiry if he is to be protected as a bona fide purchaser for value. It has been held *that whatever puts a purchaser on notice of a want of authority in a trustee to sell trust property amounts to notice* where the knowledge of the requisite facts would be

obtained by the exercise of *ordinary diligence.*" (Italics added.) 76 Am.Jur.2d Trusts, § 271, p. 493. Here, respondent testified: "Q You, as I understand it, told Mr. DeVoy that you did have the abstract examined; is that correct? A Yes, sir, it was supposed to have been examined. Q No, I'm not asking that. Did you have it examined? A Yes. Q Who was the lawyer who examined it? A Mr. Montgomery, Milan. Q Did he give you a written opinion as to the title of this real estate? A No, sir." It does not appear whether Mr. Montgomery orally advised respondent as to the state of the title. It thus appears additionally to the notice of the recorded instrument being imparted to him, respondent had the means to ascertain the trustee's authority, and that there was a lack of due diligence to acquire that information. Respondent, then, could not be protected as a bona fide purchaser for value. "Where the sale of the trust property is unauthorized and a breach of trust, the trust follows such property into the hands of a transferee, irrespective of any security given by the trustee, unless the transferee is protected as a bona fide purchaser for value." 76 Am. Jur.2d Trusts, § 256, p. 477; see also 76 Am.Jur.2d Trusts, § 455, p. 672. Appellants, as ultimate beneficiaries under the James A. Mairs trusts, did not have their interests cut out because respondent was not a bona fide purchaser under his trustee's deed.

■ Respondent says, however, that appellants, and their ancestors, were estopped because their ancestors received payments from the trust, and they, themselves, received final payment upon termination of the trust. It is the general rule typified by the cases cited by respondent, that one who knowingly receives the purchase price of his own estate sold by one assuming to act under a valid power, estops himself in equity from denying the power. *Cobb v. Massey,* 160 S.W.2d 733, 735 (Mo.1942); *Hector v. Mann,* 225 Mo. 228, 124 S.W. 1109, 1116 (1910), and cases and authority cited. It should be reemphasized that the trustee's sale proceedings, and the notices going forth therefrom as the record shows, to appellants' ancestors, were in the Sarah A. Mairs trust estate, and no mention was made of the James A. Mairs estate. It does appear that trustee Ingraham did receive income from the lands involved, at least to the extent of $125.00 annual rent paid to him by respondent for several years prior to 1963, and that Ingraham made payments for expenses of the trust and distribution to Frances S. Harrington (Martin), after the declaratory judgment settling her rights as against Ben Mairs, Sr. The previous trustee had made payments to both these persons, but in disparate amounts. After the 1963 trustee's deed to respondent, trustee Ingraham continued to make reports to the court of his activities in the Sarah A. Mairs trust estate, and on February 7, 1967, a final report was filed showing that he had paid to appellants $299.72 each as final distribution, after which he was ordered discharged as trustee.

■ Neither appellants nor their ancestors were shown to have any *actual* knowledge of their interests in the James A. Mairs trust. Respondent had the burden of proof upon the issue of estoppel. *Medical West Building Corp. v. E. L. Zoernig & Co.,* 414 S.W.2d 287, 294 (Mo.1967); *Kitchen v. McCullough,* 428 S.W.2d 907, 910 (Mo. App.1968). All that respondent could rely upon as to appellants' knowledge (and that of their ancestors—they being still alive at the time of the trustee's deed) was their constructive notice of the recorded instruments in the James A. Mairs estate. That knowledge is of the same nature as that possessed by respondent. In that situation the equal means of knowledge bars respondent's claim of waiver (through appellants' constructive knowledge) and bars the claimed estoppel arising therefrom. "The doctrine of estoppel cannot be successfully invoked where everything is equally well known to both parties, or where, though ignorant of the true state of the title at the time of the occurrence of the act which is claimed as an estoppel, the party making such claim had the means of ascertaining the truth of the matter, by reference to the records." *Mueller v. Kaessmann,* 84 Mo.

318, 329 (1884). See also *Rhoads v. Rhoads*, 342 Mo. 934, 119 S.W.2d 247, 252 (1938); *Land Clearance for Redevelopment Auth. v. Dunn*, 416 S.W.2d 948, 951[1, 2] (Mo.1967). Respondent's contention that appellants are estopped to assert their title is, for the foregoing reasons, without merit.

 Respondent's trustee's deed was delivered to him on March 9, 1963. Appellants filed their suit to quiet title to the land in question on January 8, 1973. It is apparent that the full ten year period of adverse possession which might have been a good defense to appellants' action had not run. Respondent, however, contends that he is entitled to tack onto his possession an adverse possession of his grantor trustee, Ingraham. There is no evidence, however, that Ingraham ever held the legal estate adversely to appellants' ancestors, the beneficiaries of the James A. Mairs trust. Indeed, no trustee was ever appointed in that trust estate. Regardless of that, the rule is that, unless a trustee does some open, notorious and pronounced act in hostility to the fiduciary relationship and in respect to the property held, " * * * [T]he mere possession of the premises by trustee or former trustee would go for nothing, and be deemed but a prolongation of the former fiduciary relation." *McGuire v. Nugent*, 103 Mo. 161, 15 S.W. 551, 553 (1891). See also *Kansas City v. Scarritt*, 169 Mo. 471, 69 S.W. 283, 285 (1902); *Houghton v. Pierce*, 203 Mo. 723, 102 S.W. 553, 557 (1907); and generally, 76 Am. Jur.2d Trusts, § 589, p. 796. Respondent has failed to establish his title by adverse possession.

Appellants have shown a title superior to that of respondent as was their burden to do. *Jackson v. Ward*, 292 S.W. 7 (Mo.1927); *Webb v. City of East Prairie*, 359 Mo. 247, 221 S.W.2d 153 (1949); *Moise v. Robinson*, 533 S.W.2d 234 (Mo.App.1975). They are entitled to a decree quieting their title to an undivided one-half interest in the 165 acres, and to a full interest in the 40 acres, the Southwest Quarter of the Northwest Quarter of Section 22, Township 60, Range 20, unless upon remand respondent shall prove that he is entitled to reformation as to that 40 acre omission in his trustee's deed by reason of mistake.

 Respondent presented some evidence as to improvements made by him on the farm. That issue was not ruled by the trial court inasmuch as respondent was given the decree as to title. Upon remand, since by this opinion appellants and respondent have been tenants in common of the property since March 9, 1963, respondent should be given the opportunity to develop evidence as to his good faith improvements, and to his entitlement to an equitable lien on appellants' interests for any such improvements. See *Buschmeyer v. Eikermann*, 378 S.W.2d 468 (Mo.1964); *Hahn v. Hahn*, 297 S.W.2d 559 (Mo. banc 1957).

The judgment is reversed and the case is remanded with directions to enter a decree quieting title to an undivided one-half interest in said real estate in appellants, and in a full interest in the Southwest Quarter of the Northwest Quarter of Section 22, Township 60, Range 20, unless respondent, as he shall be permitted to do, shall produce the proper degree of proof that he is entitled to reformation of his trustee's deed of March 9, 1963; and to permit respondent to produce proof of his good faith improvements on the land in question.

All concur.