HUBBARD, *Appellant*, v. HUBBARD *et al.*

### Division One, June 22, 1897.

1. **Verbal Contract for Sale of Land.** A verbal contract to convey land should be established to be clear, definite and unequivocal in all its terms.

2. ———: GIFT. If a son is placed in possession of land by his father under a verbal promise of a gift thereof, and in reliance thereon made valuable improvements, he is entitled to a decree for the execution of the gift.

3. ———: LICENSE: EVIDENCE. Possession by a son of land belonging to his father, without payment of rent, does not authorize the inference that the possession is held under a contract of sale or a promise to give, but is entirely consistent with a mere license to occupy the land, rent free, and would naturally be referred to that.

4. **Intention to Give Land.** An expressed intention to give is little short of a promise to give, and when acted upon by the intended donee, to his disadvantage, with the knowledge of the donor, the effect of a promise should be given it.

5. **Promise to Give in the Future.** A promise to give in the future, standing alone without any present consideration, can not be enforced, even though in writing; but when the donee, under a verbal promise to give land, went into possession and made valuable improvements in consequence of and in reliance upon the promise, the contract became valuable and enforcible.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*H. S. Booth* and *W. H. Kennan* for appellant.

(1) In order to take a case out of the statute of frauds upon the ground of part performance of a parol contract, it is not only indispensable that the acts done should be clear and definite and inferable exclusively

to the contract, but the contract should also be established by competent proofs to be clear, definite and unequivocal in all its terms. 1 Story, Eq. Jur. [12 Ed.], sec. 764; *Berry v. Hartzell*, 91 Mo. 137; *Rogers v. Wolfe*, 104 Mo. 2; *Brownlee v. Fenwick*, 103 Mo. 421; *Anderson v. Scott*, 94 Mo. 637; *Underwood v. Ib.*, 48 Mo. 527; *Sitton v. Shipp*, 65 Mo. 297. (2) The possession by a son of land belonging to his father, even when accompanied by valuable improvement, will not be treated as a part performance, because the relations between the parties prevent the inference which would otherwise arise from the fact and remove all the necessity of accounting for the possession by the supposition of existing contracts. Pomeroy, Spec. Perf. [1 Ed.], sec. 116. (3) So long as the obligation rests upon the promise of the donor, he may revoke it, and equity will not compel a performance. *Anderson v. Scott*, 94 Mo. 637; *Brownlee v. Fenwick*, 103 Mo. 421.

*George Robertson* for respondents.

(1) There was sufficient part performance to entitle the defendants to a deed, and a decree in their favor is proper. *Anderson v. Scott*, 94 Mo. 637; *Emmel v. Hayes*, 102 Mo. 186; *Hays v. Railroad*, 108 Mo. 554; *Hiatt v. Williams*, 72 Mo. 214; *Gupton v. Gupton*, 47 Mo. 37; *Despain v. Carter*, 21 Mo. 331; 3 Pom. Eq. Juris. [2 Ed.], sec. 1409; *Cuttler v. Babcock*, 81 Wis. 195; *Ryan v. Dox*, 34 N. Y. 307; *Poland v. O'Connor*, 1 Neb. 50; *Moss v. Culver*, 64 Pa. St. 414.

MACFARLANE, J.—The suit is ejectment to recover eighty acres of land in Audrain county. Defendant by way of equitable defense alleges that she is the widow of Edgar Hubbard deceased, who was a son of plaintiff. That her husband died July 8, 1894, leaving

her, his widow, and one child surviving him; that subsequent to his death in August, 1894, there was born of her marriage with said deceased another child, of both of whom she is guardian and curator.

She further alleges that the land formerly belonged to plaintiff, who, in 1887, put her and her husband in possession thereof, under a verbal agreement to the effect that if they would live upon and improve it he would convey it to his son, defendant's said husband. That in pursuance of said contract and thereunder, they went into the possession of the land and in full compliance therewith made lasting and valuable improvements thereon. That plaintiff had neglected to convey the land to deceased during his lifetime, as agreed, and now neglects to convey the same to her and the children of herself and deceased. Defendant, representing herself and children, prayed specific performance of the contract.

Upon the evidence introduced at the trial the court found for defendant upon the equitable defense, and by decree vested the title in the children subject to dower and homestead of defendant. Plaintiff appeals. The questions, and the only questions in the case, are, whether the agreement alleged in the answer was made by plaintiff to his son Edgar, and if so, whether there was such a performance of it, on the part of the latter, as dispenses with the writing made necessary by the Statute of Frauds, and authorizes a decree of specific performance.

The evidence leaves no doubt that defendant's husband took possession of the land and made valuable and lasting improvements thereon under some kind of an agreement with his father, by which he was permitted to occupy and use it without the payment of rent. If he was placed in possession under promise of a gift of the land, and in reliance thereon made the

improvements, then defendant is entitled to a decree for the execution of the gift. The improvements made upon the land constitute a sufficient consideration for the promise, and defendant "stands before a court of equity in the attitude of a purchaser and with equal rights and remedies." *Dozier v. Matson*, 94 Mo. 332.

The only question in the case therefore is whether the evidence is sufficient to establish the promise relied upon by defendant.

The Statute of Frauds was intended to prevent "the introduction of loose and indeterminate proof of what ought to be established by solemn written contracts," and the rule is therefore everywhere recognized that a verbal contract for the sale of land, or a promise to give land, should be "established by competent proofs to be clear, definite, and unequivocal in all its terms. If the terms are uncertain or ambiguous, or not made out by satisfactory proof, a specific performance will not be decreed." *Rogers v. Wolfe*, 104 Mo. 9, and cases cited.

It may be said in the first place that possession by the son of land belonging to the father, without payment of rent, does not authorize the inference that the possession is held under a contract of sale or a promise to give. Such possession is entirely consistent with a mere license to occupy the land, rent free, and would naturally be referred to it.

Defendant offers no direct proof of the promise relied upon. It consists wholly of declarations and admissions made by plaintiff in conversations with third persons and detailed by witnesses from memory. While proof of such statements may be so convincing as to establish the contract, yet this kind of evidence is ever regarded as most unsatisfactory, "especially when considering family disputes." In such case the contract can only be inferred from what was said and

the evidence can not have the convincing effect required to establish such contracts unless, taking what is said in connection with all the circumstances, no other inference can be fairly drawn therefrom.

It appears from the evidence that the family of plaintiff was living on the home place, and his sons John and Edgar with their wives were, and had been, living with him on the same farm. This farm plaintiff rented to others and his two sons moved upon other land belonging to him, Edgar upon the tract in controversy. This he occupied and cultivated until his death in 1894, paying no rent, but making and repairing the improvements at a cost of something like one half the rental value of the land. It is very evident from these circumstances that plaintiff intended to do something to assist in establishing his son in business and to make his own way in life, yet they are equally as consistent with a simple license to occupy and cultivate the farm as with a promise to give it to him.

But the evidence shows very conclusively that something more than a mere license was intended by the father and relied upon by the son. The evidence of plaintiff's witnesses, who undertook to give the terms of the agreement under which possession was taken, shows that the father expressed a hope that he would be able, at some future time, to give his son the land. Was, then, the possession taken and improvements made under a promise to give, or in consideration of the use of the land with the expectation that it would be given in the future? The entire evidence bearing directly on the question we here insert.

*Julia Hubbard*, wife of John Hubbard, who is a son of plaintiff, is the only witness who undertakes to testify directly to the agreement under which Edgar went into possession of the land. She testified: "We

were all living on the home place and Mr. Hubbard. had rented it out to another man, and Edgar Hubbard asked his father if he might move on the Turner farm, this 80 acre tract, and he told him he might, and told him to go on it and improve it and pay the taxes, he would charge him no rents, but not to let the improvements exceed the rents, and he hoped some day to be able to give it to him."

Plaintiff read in evidence the sworn assessment lists made by Edgar Hubbard for years 1890, 1891, 1892 and 1893.   These purported to contain a true and correct statement of all taxable property belonging to said Edgar during those years and no real estate was included.   He also read the tax receipts for the same years.   According to these receipts the taxes on this land were paid by plaintiff.   The evidence shows that in 1888 Edgar Hubbard was put in possession of the land by plaintiff and that he continued in possession until his death in 1894 without payment of rent.   The annual rental value of the land was about $200.   The evidence also shows that while in possession he built an addition to the dwelling house, a barn, and some outhouses.   He also fenced some lots, dug and walled a well, constructed a pond and repaired fencing.   The cost of these improvements was estimated at $600 or $800.

The evidence offered by defendant in support of her equitable defense consisted entirely of declarations and admissions made by plaintiff.   *Joe Downey* testified that he assisted Edgar in digging a well on the land.   Edgar became discouraged and spoke of quitting.   Plaintiff "encouraged him to go ahead with the well and dig it, that he had given him the farm and that he needed the well there and to go ahead and complete it."   *Dave Martin* testified that the day after

the death of Edgar he had a conversation with plaintiff who said "he had given Ed the place and told him to go ahead and improve it for himself." *Lydia Herndon* testified that in a conversation with plaintiff he had stated that he required his son to pay rent on the land he permitted him to use, and he remarked that he "did not ask Edward a dollar, he pays the taxes on it, or he gives the money to me and I pay the taxes for him." Witness said she had another conversation with plaintiff after suit was commenced. "He said he was glad that he had not made Edgar a deed, though he would have done it if it had not been for John's, that is his son's, bad health. He said his health was bad and he had no family; he said Edgar had a family and he was all right anyway; that is about all Mr. Hubbard said; John lives on another piece of land there at Saling, of Mr. Hubbard's. He did not say he had given John this land; he said he would have made Edgar his deed long ago if it had not have been for John's bad health, and John having no children it would go to his wife if he should die."

*Thomas Wisdom* testified to a conversation with plaintiff in a store. He reports what plaintiff said as follows: "I don't remember whether he said Edgar wanted him to make him a deed to the place, but he wanted to improve the place, and he just remarked that he told him to go ahead and improve the place, that he calculated it to be his; that is about the remark as nigh as I can tell it. He spoke as though he would give the place to Edgar, but he went on to say something about John's health not being good and if he made Edgar a deed he would have to make John a deed; that is about the run of it; that is all the talk I ever had with him, I think, about the place—only a little talk we had after Edgar died, I spoke of it."

*Mr. Shores* testified that on the day after Edgar's

death plaintiff told him that he thought he had done very well by Edgar; "that he told him when they got ready to move up there off of the old place to move on the place and improve it, and fix it as they would like it for a homestead; that he intended to give it to them; that he had never charged any rent, all he required of them was to pay the taxes."

*James Mayhan* testified to a conversation after Edgar's death. In this conversation plaintiff is reported as saying: "He said that he knowed it was Edgar's land and everybody else that knew anything knew it too—anybody that knew anything knew it was Edgar's land—and anyone that talked to the contrary didn't know what they were talking about or didn't care. I heard him make use of these observations. We have had five or six different talks with him; that was the first talk; we have had five or six different talks since that time and they all amount to about the same."

*George Pickett* testified that in a conversation with plaintiff "he spoke of the boys and said he had given these boys their places." The boys referred to were his sons Ed. and John. *Ed. Herndon* testified that in a conversation with plaintiff, in speaking of Edgar, he said: "I gave him his farm this morning, that 80 acres, and he is going to build a house upon it." There was some evidence tending to prove that Edgar refunded the taxes paid on the land by plaintiff. There was also evidence tending to prove that plaintiff paid something toward the improvements. It will be seen that three witnesses, Jos. Downey, Dave Martin and Ed. Herndon, all testify unequivocally that plaintiff told them that he had given Edgar the land. It will be observed also that these statements were made under circumstances which naturally called them out, and which would impress them upon the memory of the witnesses. The conversations could hardly be charac-

terized as casual. In the statement of plaintiff, as detailed by witness Shores, he gives something of the terms of the arrangement under which Edgar took possession, and improved the land. It shows that at the time possession was taken, plaintiff intended to give his son the farm for a homestead and so informed him.

An expressed intention to give is but little short of a promise to give, and when acted upon by the intended donee, to his disadvantage, with the knowledge of the donor, the effect of a promise should be given it.

The evidence of Joe Downey is to the same effect. The word "calculated" was evidently used by this witness, as by plaintiff, in the sense of "intended." This witness testified that plaintiff told him that he charged Edgar no rent but required him to pay the taxes. If the land had been given to Edgar, plaintiff could have charged no rent and would have been under no obligation to pay the taxes. These declarations appear inconsistent with the equitable defense, but we do not think they are so in fact.

Defendant only charges a promise to give in the future. Standing alone there was no consideration for it, and it could not have been enforced, though it had been in writing. But when the promised donee went into possession, and made the improvements in consequence of and in reliance upon the promise, the contract became valid and enforcible. These acts constituted a valuable consideration. The verbal promise, also, when first made, was not enforcible because within the Statute of Frauds. The promise also seems to have been conditioned upon making improvements. Plaintiff evidently wished to test his son's business capacity before executing his promise. The explanation is thus given to the statements of plaintiff that he intended to charge no rent for the use of the land. It tends also to explain why defendant's husband omitted

the land from the assessment lists made by him. Plaintiff had not yet completed the gift by executing and delivering a deed to the donee, and until that was done the legal title remained in him. A deed was not made, as explained by plaintiff, because he did not wish to give his son John the land he occupied, for the reason that he had no children and was in delicate health, and in case of his death the land "would go to his wife." He wished to avoid family disputes.

Taking all the evidence and the circumstances together, no reasonable inference can be drawn therefrom other than that plaintiff promised to give the land to his son, and that the improvements were made in reliance upon the promise. The promise to give, in our opinion, was sufficiently proved to authorize the decree rendered.

The judgment of the circuit court is therefore affirmed. BARCLAY, P. J., ROBINSON and BRACE, JJ., concur.