## H. R. HARTWELL et al., Appellants, v. MARIA PARKS.

### Division One, February 29, 1912.

1. **EVIDENCE: Relaxation of Rules: Burnt Records.** From the very necessity of things the strict rules of evidence must be relaxed in support of ancient and dim transactions. When the records of land titles are in ashes, witnesses to wills dead, and the transactions in judgment ancient, the rules of evidence are relaxed and the law applies certain kindly and convenient presumptions based on common experience and observation.

2. ————: ————: ————: **Presumptions.** All things are presumed to be lawfully done, and duties to have been duly and rightly performed, by officers and private citizens, until proof to the contrary be made. And when the law required a thing to be done in a certain way, and the records that it makes the evidence of that ancient transaction are burned, and the witnesses are dead or their memory dimmed by time, the law will presume that that thing was done in the way the law required.

Hartwell v. Parks.

3. ———: ———: ———: ———: **Probate and Record of Will.** Where by legislative enactment "Carleton's Abstracts" were made evidence of land titles in Pemiscot county, the records having been burned, and those abstracts show this entry in connection with all the numerous tracts of land of Alexander Barnes except the one tract in suit: "Alexander Barnes to Agnes Barnes, conveying all lands in Pemiscot county; consideration, love and affection. Instrument, last will, dated September 10, 1869, filed July 8, 1871, recorded book D, page 9," it will be presumed, in the absence of any further showing, that the will was both probated and recorded, since nearly forty years have elapsed, and the statute required the recording of a will by the clerk of the county court in a book kept for that purpose within thirty days after probate and that the original should be carefully kept in his office.

4. ———: ———: ———: ———: ———: **No Entry Opposite Particular Tract in Suit.** And where the plaintiffs are the brothers and sisters of said Alexander Barnes or their descendants and claim only as his heirs, it will not be held that the fact that no minute of the terms of the will appears in the abstract in connection with the particular tract in suit, is fatal to the title of the devisee Agnes or of her grantee.

5. ———: **Will: Probate.** The validity and consequent operative force of a will as a muniment of title to real estate hinge on its being probated in common and solemn form. The probate of a will is the crucial test of its validity to vest title in the devisee. Without such probate it is a mere writing, not a muniment of title.

Appeal from Pemiscot Circuit Court.—*Hon. H. C. Riley,* Judge.

AFFIRMED.

*McKay & Corbett* and *C. G. Shepard* for appellants.

(1) There was not sufficient evidence before the trial court to show the instrument which witness Wells testified to witnessing as the will of Alexander Barnes, was the same instrument under which Agnes Barnes claimed said lands, and even though it was admitted to be the same instrument, there is neither proof nor fact sufficient to create a presumption that said will

had been probated. Therefore it was ineffectual to pass title to Agnes Barnes. Neither was there sufficient evidence to show the instrument which the Carleton's abstract purported to give as the will of Alexander Barnes was in fact executed by the said Barnes. By statute a will although duly executed is of no force and conveys no interest until duly probated. Smith v. Estes, 72 Mo. 310; Snuffer v. Howerton, 124 Mo. 637; Rodney v. McLaughlin, 97 Mo. 427. Neither is the fact that the will was recorded in the recorder's office even a presumption that the will had been probated. Fenderson v. Tie Co., 104 Mo. App. 290. (2) The entries in Carleton's abstract pertaining to said will offered in evidence by the defendant were inadmissible for any purpose and should not have been received by the court. Said entries did not even purport to be a copy of said instrument or an abstract thereof. The entries are the mere conclusions of the party compiling the abstract, and are not even a copy of the smallest part of the instrument claimed to have been abstracted. (3) The abstract to the land in question does not show any will by Alexander Barnes at all, and in order to show a will which affected the land in question defendant offered and the court received entries of said abstract of other sections of land showing what said abstract recited was a will from Alexander Barnes to Agnes Barnes, of all land in Pemiscot county. This testimony was hearsay as to the land in question and should not have been admitted. (4) The judgment must be reversed because of the failure to have said will probated. C. P. Wells, one of the witnesses signing said will at the time it was executed by Alexander Barnes, testified that he had been a constant resident of Pemiscot county since 1868, that he witnessed a will for Alexander Barnes, and had never seen it since that time, and when asked the direct question of his appearing in the probate court as a witness when said will was probated, answered he did nothing

of the kind. This we think is almost conclusive evidence that said will was never probated, and when taken in connection with the fact that what purports to be the records in the case, Carleton's Abstract, are perfectly silent on the question, this proof is conclusive that the will was not probated.

*Arthur L. Oliver* for respondent.

(1) The thirty-one year Statute of Limitations is a complete bar to a recovery in this case by appellants. Silvers on Exam. of Mo. Tit., p. 394; Collins v. Pease, 146 Mo. 135; Campbell v. Greer, 209 Mo. 199; Fairbanks v. Long, 91 Mo. 628; McVey v. Carr, 159 Mo. 648; Plaster v. Gabnell, 160 Mo. 669; Campbell v. Greer, 209 Mo. 199; Hubbard v. Slavens, 218 Mo. 615. (2) It is unnecessary to plead the thirty-one year Statute of Limitations. Collins v. Pease, 146 Mo. 139; Campbell v. Gas Light Co., 84 Mo. 352; Franklin v. Cunningham, 187 Mo. 184; Fairbanks v. Long, 91 Mo. 628; Stacker v. Green, 94 Mo. 280; Bud v. Sellers, 113 Mo. 580; Coleman v. Drane, 116 Mo. 387. (3) Respondent showed a legal and sufficient paper title. Respondent showed by Carleton's Abstracts that on September 10, 1869, a last will was executed by Alexander Barnes conveying all his land in Pemiscot county to his wife, and that such will was duly filed July 8, 1871, and recorded in the county clerk's office of Pemiscot county. It is apparent from the entries of Carleton's Abstracts that this will was duly recorded. By section 25, R. S. 1865, it was provided that all wills conveying said estate shall be recorded by the county clerk within thirty days after probate, which implies that a will under that section of the statute was not entitled to record and could not be recorded until after it was probated. Thirty-six years elapsed after the filing of this will before the institution of this suit. The instrument being now lost and the records thereof burned, it should be pre-

sumed that it was properly proved and probated, especially in view of the entries of Carleton's Abstracts shown in evidence. Unless this presumption be indulged, the county clerk violated his duty in recording the will before it was probated, while the presumption is that he did his duty, thus affording another reason for the presumption that the will was duly probated. Rothwell v. Jamison, 147 Mo. 611; Creasy v. Alderson, 43 Mo. 20; Seward v. Didier, 16 Neb. 58; Coombs v. Lane, 4 Oh. St. 112; Ward v. Barrows, 2 Oh. St. 241.

LAMM, J.—Suit brought in Pemiscot Circuit Court in 1907 under old section 650 (now sec. 2535, R. S. 1909) to determine title to the northeast quarter of section 36, township 20, range 12, Pemiscot county. From a decree for defendant, plaintiffs come up.

The common source of title, Alexander Barnes, died in 1869, a resident of Pemiscot, leaving Agnes his widow and no children, and seized in fee of many parcels of land situate here and there in that county— among them, that in dispute. Some of plaintiffs are the half-brothers and half-sisters of Alexander, others are the descendants of those dead. Defendant holds, if at all, under the will of John C. Parks, deceased, duly probated. Agnes, relict of Alexander, intermarried with one Cropper. John C. Parks held under a conveyance executed in 1902 by Agnes (now dead) and her said second spouse, and duly spread of record. Agnes, in turn, held an estate (that has fallen in) as common law dowress, or as owner in fee under the will of her first spouse.

The issue here is sharp and single. If Alexander died testate and his will devised the land to his widow, as asserted by defendant, then defendant's title is good by devises and mesne conveyances. *Contra,* if he died intestate as to this land, or if his will did not operate to devise it to her, then, subject to her dower, the title by descent cast vested, *eo instante,* on Alexander's

death in his half-brothers and half-sisters and (Agnes's dower having lapsed) now rests in them and the descendants of those dead, to-wit, plaintiffs. In that view of it, they hold a good title unless the thirty-year Statute of Limitation bars action and vests title in defendant, or unless there is laches in the way.

The petition alleges and the answer denies that the land is wild and uncultivated timber land, not in the possession of any one. The proof shows that it is fenced, partly cleared and cultivated, and has been in defendant's possession since the death of her husband in 1905. Prior to that it had been in possession of her husband since the date of his deed in 1902.

The petition alleges plaintiffs have a fee simple title and that defendant makes a claim (adverse and prejudicial to them) of some right, title, estate, or interest, the nature and character of which is unknown to plaintiffs. By answer defendant admits such adverse claim, alleges she is the owner in fee, denies plaintiffs' ownership and avers that for "many years" by and through her tenants and grantors she is and has been in actual possession. The proof tends to show that Agnes at the time of her husband's death and until she conveyed, claimed to own the land, that most of plaintiffs lived for a generation or so near the land, that plaintiffs knew of her claim of ownership and assertion of title under her husband's will from the outset and never asserted any title or claim until a few months before the 3d day of October, 1907, when they had an abstract of title made (which, they claim, disclosed their ownership) and thereupon on said date brought this suit; that the title emanated from the general government in 1850, that the land was swamp land, that it was patented by Pemiscot county to Alexander Barnes in 1858, that during his lifetime he paid the taxes thereon, that since his death his widow and after her those claiming under her paid the taxes to this time, that plaintiffs paid no taxes and were never in

possession, and that at a certain unnamed time those records of Pemiscot county that did not go up in smoke and flame were reduced to ashes.

It is agreed that a certain set of abstract books known as "Carleton's Abstracts" became by legislative enactment and orders of the circuit and county court evidence of land titles in that county.

The proof also shows, as said, that Alexander Barnes owned a great many scattered tracts of land in Pemiscot, that Carleton's Abstracts show the following entry anent the will of Alexander, to-wit: "Alexander Barnes to Agnes Barnes, *conveying all lands in Pemiscot county,* headed consideration, love and affection. Instrument, last will, dated September 10, 1869, filed July 8, 1871 recorded book D page 9." That entry appears on those abstract books opposite every other tract of land of which Barnes died seized, but not opposite the tract in question.

Defendant to further sustain the issues on her side put in parol testimony from an old citizen, Mr. Wells, a witness to the will of Alexander Barnes. It is shown thereby that Carleton wrote the will, and that it was signed by Carleton, Keyser and Wells as witnesses. Mr. Wells remembered that the will left all of testator's real estate, "his entire holding," to Agnes his wife, that testator left a small sum to "his preacher" who lived in New Orleans, say, twenty-five dollars, and his land he willed to his wife. Mr. Wells did not remember appearing at the probating of the will.

On such record, the questions are:

First. Is the absence of the entry showing the recording of a will, with a minute of its terms, opposite or in connection with the land in question, on Carleton's Abstracts, fatal to defendant's title?

Second. The entry being silent about a *probate* of Alexander's will, is that silence a fatal flaw in defendant's title?

Third. The title having emanated from the Government in 1850 and Alexander having become patentee in 1858, and he and his widow and her grantees having paid all taxes since 1858, and the present defendant being in actual possession for more than one year before the institution of this suit, and plaintiffs having paid no taxes for over thirty years and never having been in possession—on such premises, we say, does the thirty-year Statute of Limitation run in favor of defendant? (And herein of the question: Is it necessary to plead the thirty-year Statute of Limitation in a suit under old section 650?)

Fourth. In any event, is there laches precluding recovery on the part of plaintiffs? (And herein of the question: Is laches a defense that must be pleaded to be effective?)

It is obvious that if the first two asking propositions be ruled in favor of defendant, plaintiffs' case breaks at that point, the land is hers and the judgment stands for affirmance. In that view of it, the last two will not be reached. We are of opinion they should be so ruled and that the trial court solved its problem in good form and according to rule. This, because:

(a) What we have to say on the concrete case may appropriately follow some general pertinent and controlling propositions. Thus: From the very necessity of things the strict rules of evidence must be relaxed in support of ancient and dim transactions. "There is a time when the rules of evidence must be relaxed. We cannot summon witnesses from the grave, rake memory from its ashes, or give freshness and vigor to the dull and torpid brain." [per AGNEW, J., in Richards v. Elwell, 48 Pa. St. l. c. 367.] Experience, says the wise Latin, is mistress of things (*Magistra rerum experientia.*) We learn from the school of that mistress that when records of land titles are in ashes, witnesses to wills dead, scattered to the four winds or their memories are dull and dim with age and

the transactions in judgment are ancient, the affairs of mankind would fall into an inextricable confusion lead- ing to dismay and evil if the rules of evidence were not relaxed and if the law did not delight in applying cer- tain kindly and convenient presumptions based on com- mon experience and observation. Under such circum- stances as said by Chief Justice FULLER, in Hammond v. Hopkins, 143 U. S. l. c. 274, "the hour glass must sup- ply the ravages of the scythe." One of the precepts of the law is: What ought to be done is easily presumed. Another is: Presumptions arise from what generally happens. [Post v. Pearsall, 22 Wend. l. c. 475, *et seq.*] We may borrow a little with profit from that case, viz.:

"The presumption of a fact is the conclusion drawn in the silence of all positive proof, from such existing circumstances as common experience shows ordinarily to accompany or follow the fact presumed. One of the greatest of modern civilians has condensed the whole philosophy of presumptive evidence into a definition of six words: *'Presumptio, ex eo quod pler- umque fit.'* *Cujas* as quoted by *Pothier.* Every well grounded presumption, then, is but an inference of the understanding from the common observation of life and the usual motives and conduct of mankind. . . . And again (quoting from Chancellor ERSKINE in Hil- lary v. Waller, 12 Ves. 265): 'Mankind, from the in- firmity and necessity of their situation, must, for the preservation of their property and rights, have re- course to some general principle to take the place of individual and specific belief, which can hold only as to matters within our own time; upon which a conclu- sion can be formed from particular and individual knowledge.' "

Again: Experience teaches us that things are generally rightly done. That to do things wrongly is the exception, not the rule. Therefrom certain con- venient and lenient legal presumptions arise and are

universally indulged by courts when called for in ad-
ministering justice, to-wit: All things are presumed
to be lawfully done, until proof be made to the con-
trary. [2 Co. Litt. (1 Am. Ed.), 232b.] All things
are presumed to have been rightly and duly performed
until it is proved to the contrary. [Co. Litt. 232, *Ibid.*]
Agreeably to those presumptions run the trite ones that
innocence is presumed, that due care is presumed, that
negligence is not presumed, and many more of the fam-
ily of friendly inferences. Says SERGEANT, J., in Foulk
v. Brown, 2 Watts, 215: "The rule of presumption,
when traced to its foundation, is a rule of convenience
and policy, the result of a necessary regard to the peace
and security of society." [Quoted with approval by
this court in Williams v. Mitchell, 112 Mo. l. c. 313.]

So, "The subject of the favorable presumptions
which are indulged in behalf of persons acting in an
official capacity, especially after a long lapse of time
has intervened, has been quite extensively discussed
in Long v. Joplin M. & S. Co., 68 Mo. 422. In similar
circumstances the like lenient presumptions are in-
dulged in favor of persons who occupy no official sta-
tion. Every one is presumed to govern himself by
the rules of right reason, and consequently that he ac-
quits himself of his engagements and his duty. [1
Phil. Ev., Cowen & Hill's notes, pp. 604-605, sec. 10.]"
[Per SHERWOOD, J., in Lenox v. Harrison, 88 Mo. l. c.
496.]

Again: When things are done which are concomi-
tant with other things, and which could not be right-
fully done unless those other things which usually pre-
cede them, or which must legally precede them, are
also done, then when the case requires it the law sup-
plies the presumption that such antecedent things were
also done (Chlanda v. Transit Co., 213 Mo. l. c. 260,
*et seq.* and authorities and cases cited)—the maxim
being: "Extremes being proved the medium things

are presumed'' (*Probatis extremis, praesumuntur media*).

The foregoing maxims, precepts and presumptions are applied in innumerable cases to work out justice. And as no general rule applying them can be given, examples will best show the trend of the judicial mind in that behalf, viz.:

In State ex rel. v. Kupferle, it was ruled that where the directors of a private corporation were acting as such in fact, it will be presumed they were really elected until the contrary be shown. [44 Mo. l. c. 158.]

In Long v. Smelting Company where the question was over the delivery of an administrator's deed it was ruled that where the purchase money was shown to be paid the presumption was that the deed was delivered —delivery being a usual concomitant in the ordinary course of business. [68 Mo. l. c. 430 *et seq.*]

In Wooldridge v. Quinn it was claimed the judgment entered was not the judgment rendered by the court. On proof that the clerk's minutes supported the judgment it was ruled that presumptively the judgment was right. [70 Mo. l. c. 371-2.]

In American Insurance Company v. Smith, where the question was whether a note was void because the plaintiff company had no right to do business in the State, it was ruled that the possession of the note by plaintiff company was presumptive evidence that it had complied with our laws relating to admission to the State to do an insurance business—in other words its transaction of business was presumed to be lawful and not unlawful. [73 Mo. l. c. 370.]

In Fitzgerald v. Barker it was ruled that the possession of a note payable to another was sufficient to raise a presumption of a proper transfer to plaintiff. [85 Mo. l. c. 20-1.]

In Bush v. White it was ruled that the narration of an officer in a deed that the sale was made at the courthouse raises a presumption that the sale was con-

ducted at the lawful and customary place for execution sales, to-wit, at the courthouse door. [*Ibid. l. c.* 357.]

In Breckenridge v. Insurance Company, where the question was whether the assignment of a policy of insurance had been communicated by a regular agent to the company, it was ruled that presumptively it was communicated and was approved by the company, this being the orderly and usual course of business. [87 Mo. l. c. 71.]

In Hammond v. Gordon it was ruled that the court would presume that the officer taking an acknowledgment of a deed stamped his seal thereon. [93 Mo. l. c. 225.]

In McCoy v. Cassidy it was ruled that where the record copy of a sheriff's deed did not show a seal, the presumption would be indulged that the original was sealed where the copy so stated. [96 Mo. 429.]

In Blodgett v. Perry, in aid of a sheriff's deed it was ruled that it would be presumed that the clerk who issued and the sheriff who sold under the execution, obeyed the dictates of duty and complied with the law. [97 Mo. l. c. 271-2.]

In Williams v. Mitchell, 112 Mo. 300, it was held that the payment of a note for the purchase money of land and the delivery of a deed for the land might be presumed from facts stated.

In State ex rel. v. Ross, 118 Mo. l. c. 63, it was ruled that the filing of a provisional order appointing a receiver presupposes the filing of a petition prior to that order and that a presumption arises such petition was filed first.

In Chouteau v. Railroad, 122 Mo. l. c. 384, it was ruled that where the charter of a railroad company did not authorize it to receive a conveyance of land except for railroad purposes, it would be presumed that a given conveyance was received for such purposes.

In Ivy v. Yancey, 129 Mo. l. c. 509, it was ruled

that the making of a trust deed on land presupposed a prior deed to grantor by which she acquired title.

In Roe v. Bank, 167 Mo. l. c. 424, where bank books showed a loan was made the presumption was indulged that the nature, character and the essential features of the loan were known to the bank and were approved by it in all points and particulars.

Such examples, showing the application of presumptions arising from the course of ordinary business, in the absence of countervailing testimony, might be indefinitely extended, and we close with two more closer to the point.

In Creasy v. Alverson, 43 Mo. l. c. 19-20, in the case of a domestic will, it was held that the record of the will which had upon it the proof of its execution, presupposed its proper admission to probate—a probate being necessary to entitle the will to record.

In Rothwell v. Jamison, 147 Mo. 601, the Creasy case was cited with approval and it was ruled that the recording of a will, with the evidence taken when the will was exhibited for proof, created a presumption that there had been an order confirming the probate of the will when a long time had elapsed, because otherwise the recording of the will was in violation of the law. That is, the action of the recording officer would be presumed proper, absent countervailing proof.

(b) We come now to apply the maxims, precepts and presumptions, together with the principles to be educed from the cases cited in their broad philosophy, to the case at bar. At the time of the death of Alexander Barnes the statute required the recording of a will by the clerk of the county court in a book kept for that purpose, "within thirty days after probate," and that the original should be carefully filed in his office. Where lands were situate in different counties a copy of a will devising the same was required to be recorded in the recorder's office of each county, "with-

in six months after probate.'' [R. S. 1865, secs. 25 and 28, p. 530.]

The validity and consequent operative force of a will as a muniment of title to real estate, hinges on its probate in common or solemn form. A probate of a will is the crucial test, *experimentum crucis,* of its vitality and validity in vesting title to real estate in a devisee. Without such probate there is a writing, a mere scroll, but no *will.* Accordingly the statute contemplates a probate of a will as a condition precedent to its record—the theory being no probate, no will; no probate, no record. The will of Alexander Barnes, as shown by Carleton's Abstracts, was recorded nearly forty years gone. It was not entitled to such record without a probate and an officer who recorded it without a probate would have violated his statutory duty. At the times in hand wills were probated in county courts and the very clerk whose duty it was to record the will after probating, was clerk of that court and had custody of its records. His duty was to inform himself of the fact of probate and not to record the will without one. The presumption is he did his duty.

The premises in mind, in aid of this ancient document on which the parties have rested with tranquility and security for more than the average life of a man, we think the presumptions and doctrines considered in paragraph ''a'' of this opinion may be invoked. We rule, then, that the presumption is that the will was probated—that its very record presupposes a probate.

If probated, as we shall presume, then its terms are to be reckoned with. Those terms are that it willed all testator's lands in Pemiscot county to Agnes Barnes. Given that Barnes owned the land in dispute, as here, that will devised it to his widow, and we so hold.

We are cited to Fenderson v. Timber Co., 104 Mo. App. l. c. 296-7, as holding a contrary doctrine. The

will dealt with there was a Pennsylvania will. It was recorded here with no certificate of probate and it was held inadmissible as a muniment of title, absent proof of probate. It was held that its mere record here was no evidence it had been proved and probated in Pennsylvania in accordance with our laws as our statutes require. The Fenderson case is not our case.

(c) Something is made of the fact that a minute of the terms of the will do not appear on the abstract books in connection with the tract. We do not consider that omission fatal. If these plaintiffs were purchasers for value without having knowledge or information of the existence of a will, and if they had bought the land from an apparent owner relying on the history of the title of the specific tract as it appears on Carleton's Abstract books, we might have a different case here. But it substantially appearing from the entries on those abstract books that the will covered all the land of Barnes, it should therefore have been noted in connection with the tract in dispute. That it was not is a mere oversight. It injured no one. That mistake did not leave the title in plaintiffs. If the will had been noted on those abstract books disconnected from any specific tract, would it not take the place of a record of the will as a muniment of title? That would be precisely the situation if the record had not been burned, and it had been read into the case. The point is without substance.

The views expressed settle the case without determining the two last propositions argued by counsel. Accordingly they are reserved.

The judgment is affirmed. All concur.