WILLARD MIZELL, RAY MIZELL, NOLA MAE MIZELL, HOWARD WILKINS, WILL WILKINS, WILSON WILKINS, all adults, and JAMES THOMAS MIZELL, NEIL WINFORD MIZELL, BOYD WILKINS, minors, acting by and through their duly appointed Guardian and Curator, L. EDMONSTON, Appellants, v. J. M. OSMON.—No. 39376.—189 S. W. (2d) 306.

Division One, September 4, 1945.

322

*Elbert L. Ford* and *Langdon R. Jones* for appellants.

324

*Hal H. McHaney* for respondent.

DALTON, C.—Action to determine title and in ejectment for described lands in Dunklin county, with cross action to quiet title in defendant and to establish an equitable lien for improvements if title be found in plaintiffs. The trial court found for defendant and plaintiffs have appealed.

Mary Jane Herman, the admitted common source of title, died in 1907. Plaintiffs claim as devisees (remaindermen) under her will. The will, dated February 23, 1905, was filed and admitted to probate in Dunklin county on August 26, 1907, but it was never recorded in the recorder's office. Defendant claims title by mesne conveyances under an alleged warranty deed of Mary Jane Herman, under deeds executed by her heirs at law (who under the will were only life tenants) and by adverse possession.

Mary Jane Herman acquired an interest in the described property in 1871, as Mary J. Mizell, and an interest in 1874, as Mary J. Bell. In 1893 she was residing on the property with her daughter and daughter-in-law and their children. On February 16, 1893, she married William Herman, a well-to-do citizen, and moved to Hornersville, Missouri. After she moved away, her daughter, Anna Wilkins, (later married to Johnson) with two children, Joe Wilkins and Louis Wilkins,

resided on the north one-half (50 acres) of the described property. Missouri Mizell, the widow of T. A. Mizell, a deceased son of Mary Jane Herman, resided on the south one-half (50 acres) of the described property with her four children. The Wilkins and Mizell families thereafter continued in possession of their respective portions of the described property, farming it, paying the taxes and, apparently, paying no rents to Mary Jane Herman. As early as 1905 (the earliest record available) the taxes on the north tract were assessed to W. C. Wilkins (Anna Johnson's first husband) and they were paid by G. J. Johnson, her second husband. The south 50 acres was assessed to E. F. Russell, the second husband of Missouri Mizell. For 1906 the north tract was assessed to Mrs. J. A. Wilkins and the south tract to Missouri Russell.

Appellants concede "it is a fair assumption from all the facts, that these parties did not pay Mrs. Herman rent." The only living survivor, Thomas A. Mizell (son of Missouri Mizell) didn't pay any rent and had no recollection of ever having paid any rent to his grandmother. He didn't think she exercised any possession over any of the land after she married Mr. Herman.

On January 25, 1896, for a recited consideration of one dollar, Mary Jane Herman executed a deed to her four Mizell grandchildren for the south 50 acres of the described property. The deed was written in the usual and ordinary form of a warranty deed with all covenants. The acknowledgment, ▋ in usual form, was taken by one, "Floyd Kinsolving, M. D." Floyd Kinsolving was then a duly qualified and acting Notary Public within said county, but the words "Notary Public" and the date of expiration of his commission do not appear on the deed. The deed was signed by mark (Mary Jane Herman could neither read nor write). Immediately following the description of the real estate are the words: "The said land to remain in my possession and this deed only to be void and in force at my death." The deed was duly recorded on December 22, 1896. The named grantees, and their ages at the date of the deed, where as follows: William C. Mizell 9 years old, Sammy C. Mizell 7 years old, Walter Mizell 5 years old, and Thomas A. Mizell 2 years old. These children and their mother, Missouri Mizell, were then in possession of the described property and they remained in possession and farmed it until they conveyed to defendant's predecessor in title. Thomas A. Mizell, who was born in July, 1893, testified that he and his brothers had claimed to own the entire title to the south 50 acres as far back as he could remember.

There was evidence that Mary Jane Herman "was aiming" for the Mizell children to have the south 50 acres and the Wilkins children the north 50 acres; that, "it was common knowledge in the neighborhood that these parties claimed to own the respective tracts"; and that

Anna Wilkins told defendant's predecessor in title that "her mother gave it (the north 50 acres) to her and her boys."

On May 25, 1904, Mary Jane Herman obtained a decree quieting and determining the title to the described lands as against the unknown heirs of Sarah R. Atkinson and C. S. Atkinson, her husband. Sarah R. Atkinson was, apparently, the record owner of an undivided 1/3 interest in the property prior to 1872.

By the will of Mary Jane Herman, admitted to probate on August 26, 1907, the described property was all devised as follows: "To my beloved daughter Anna Johnson and to my grandchild, Joe Wilkins, Louis C. Wilkins, William Mizell, Samuel Mizell, Walter Mizell and Thomas Mizell . . . to hold the same during their natural lives in equal parcels share and share alike, and at their death to go to the heirs of their bodies in fee simple. Should either of the above named legatees die without issue then his or her share to go to the other heirs living in equal parts." All of the named devisees survived the testatrix.

During 1915-1917, the defendant's immediate predecessors in title obtained warranty deeds from Anna Johnson and the Mizell and Wilkins children, purporting to convey the fee simple title to the described real estate. Defendant acquired the property by warranty deed in 1931, in good faith and without any actual knowledge of the existence of the will of Mary Jane Herman or of any claim by plaintiffs, and made improvements of the reasonable value of $3600. During the period from 1913 to 1940 (and subsequent to the probate of the will) some 13 different deeds of trust were executed on the described property by defendant or those under whom he claims and, apparently, the deeds were accepted without question.

Anna Johnson, daughter of Mary Jane Herman and one of the named devisees in her will, died in 1925, Joe Wilkins in 1929, Louis Wilkins in 1938, William Mizell in 1934, and Samuel Mizell in 1933. All died leaving heirs of the body. Walter C. Mizell died in 1939 without heirs of the body. The only named devisee who survived him was his brother Thomas A. Mizell. Thomas A. Mizell is living and has two children (prospective heirs of the body). The heirs of Mary Jane Herman, as of November 30, 1939 (when Walter Mizell died), were Willard Mizell, Ray Mizell, Nola Mae Mizell, Howard Wilkins, Will Wilkins, Wilson Wilkins, Boyd Wilkins and Thomas A. Mizell. These parties and the children of Thomas A. Mizell are plaintiffs.

Plaintiffs' action was filed June 8, 1940. The cause tried and taken under advisement on or about March 5, 1941 and a decree entered for defendant on September 18, 1944, on the theory that the Mizell and Wilkins children were put in possession under a parol gift by Mary Jane Herman during her lifetime; that they thereafter claimed ad-

versely to her, from and after her marriage in 1893; and that title was vested in defendant by limitations under Sec. 1008, R. S. 1939.

Assuming that title passed by the will of Mary Jane Herman and that the eight surviving heirs took the interest of Walter Mizell on November 30, 1939, the appellants concede that they have no interest in the 1/7 interest of Anna Johnson (conveyed by her sons), no interest in the 1/7 interest of Joe Wilkins (his heirs being barred by the statute of limitations), no ▮▮▮ interest in the life estate of Thomas A. Mizell in a 1/7 interest (conveyed by his deed), and no interest in a 1/56 interest (the 1/8 interest in Walter Mizell's 1/7 interest) acquired by Thomas A. Mizell and conveyed by his warranty deed.

Appellants assign error on the finding for respondent and contend the finding should have been for appellants to the extent of the interests in dispute, because respondent and those under whom he claims had constructive knowledge of the will of Mary Jane Herman. Respondent, on the other hand, contends that his predecessors in title purchased in good faith for a valuable consideration, without actual or constructive knowledge of the will; and that appellants are estopped by the "non-recordation of the will" to assert title against the grantees of the heirs at law of Mary Jane Herman.

▮▮ There has been little change in the applicable statutes since the will in question was probated, and we shall refer to the present statutes. Section 3427, R. S. 1939, applicable to deeds and conveyances recorded in the recorder's office, provides that the record thereof shall impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice thereof, but we find no such statute applicable to the record of wills in the probate court.

Section 1845, R. S. 1939, provides that, under certain circumstances, "all records heretofore made by the recorder of the proper county by copying from any . . . will or copy of a will . . . whereby any real estate may be affected in law or equity . . . shall hereafter impart notice to all persons of the contents of such instruments," and that hereafter the same result shall follow after the instrument has been recorded for one year. See, also, Rothwell v. Jamison, 147 Mo. 601, 49 S. W. 503. And it has been held, in effect, that a will recorded in the recorder's office imparts notice without reference to said statute. Hartwell v. Parks, 240 Mo. 537, 551, 144 S. W. 793; Koch v. Jenkins (Mo. Sup.), 300 S. W. 469, 472; Brooks v. Eskins, 24 Mo. App. 296, 302.

Section 549, R. S. 1939 provides that, "In all cases where lands are devised by last will, a copy of such will shall be recorded in the recorder's office of the county where the land is situated . . . within six months after probate." A somewhat similar provision requires the recording of deeds (Sec. 3426, R. S. 1939) and decrees of court affecting title (Sec. 1298, R. S. 1939). Section 3428, R. S. 1939

and Sec. 1298, supra, further provide that if such deeds or decrees are not so filed in the recorder's office they shall not be valid or effective, except between the parties thereto and persons having actual knowledge thereof. We find no similar provision applicable to wills which have not been recorded in the recorder's office. Section 3440, R. S. 1939 of the article applicable to conveyances of real estate and dealing with the acknowledgment, proof or recording of instruments in writing, affecting real estate, expressly provides that "none of the foregoing provisions" shall be construed as extending to last wills and testaments.

Section 549, supra, requiring wills to be recorded, does not specify what result shall follow the failure to record a will in the recorder's office. Rodney v. Landeau, 104 Mo. 251, 260, 15 S. W. 962; Wolf v. Brown, 142 Mo. 612, 617, 44 S. W. 733; Rodney v. McLaughlin, 97 Mo. 426, 429, 9 S. W. 726. Nor does the statute name the party who shall file the will for record in the recorder's office. Hellman Commercial Trust & Savings Bank v. Looney, 271 Mo. 545, 197 S. W. 144, 146. A failure to so record a will does not affect its admissibility in evidence. Simpson v. Lehmann (Mo. Sup.), 219 S. W. 608, 609; Sec. 548, R. S. 1939.

In the case of judgments and conveyances, there are parties in existence who can look after their own interests and comply with Section 3428, supra, (applicable to deeds) and with Section 1298, supra, (applicable to judgments), but, in the case of a will, the testator is dead and particular beneficiaries may not be in existence. The intention of the testator might be defeated, if a failure to so record the will in the recorder's office would defeat the will. Other reasons of public policy may fully justify Sec. 532, R. S. 1929 (excluding wills not presented for probate within one year). State ex rel. Bier v. Bigger, 352 Mo. 502, 178 S. W. (2d) 347.

Apparently, the particular question now presented has not been decided by this court. Gill on Missouri Titles, Third Edition, Sec. 723, p. 365. In Nichols v. Hobbs (Mo. Sup.), 197 S. W. 258, 260, a devisee took a life estate under a will but, due to the erroneous recording of the will in the recorder's office, the devisee appeared to take the fee, and a purchaser of the devisee's right, title and interest in the devised real estate was held to be bound by the true terms of the will. In that case the records in the recorder's office disclosed the existence of a will and the court where it had been probated and recorded. In Jones v. Nichols, 280 Mo. 653, 216 S. W. 962, 965, a devisee in an unprobated and unrecorded will was in possession of real estate claiming it under the will and one purchasing from an heir at law of the testator was held to have had constructive notice of the will by reason of the devisee's open possession of the property, and so took subject to the devisee's interest when the will was probated. In Keaton v. Jorndt, 259 Mo. 179, 193, 168 S. W. 734, it was held

that, where a foreign will was not probated or recorded in the county where the land was located and the collector had no notice of the will or its contents, the collector had a right to assume the "record owner" died intestate; that, under Sec. 9303, R. S. 1899, he could sue the "record owners by descent"; and that the purchasers at the tax sale bought without constructive notice of the unrecorded will.

In the case now under consideration, testatrix resided in Dunklin county, where the land was located, and her will was duly probated and recorded in the records of the probate court. Those attempting to purchase from the heirs of the testatrix were bound to know that the deceased owner could have made a will (Secs. 519 and 550, R. S. 1939); that, if there was such a will, it would be probated and recorded in the probate court of the county of deceased's residence or in the county where the land was located (Sec. 531, R. S. 1939; Nichols v. Hobbs, supra); that the heirs of the deceased record owner would acquire no title by descent, unless such owner "died intestate as to such estate" (Sec. 306, R. S. 1939); that in case of testacy the will of the testator is the only law of distribution (Gibson v. Johnson, 331 Mo. 1198, 56 S. W. (2d) 783); and that any apparent interest of the heirs at law (as such) would cease upon the probate of a will. Nichols v. Robinson, 277 Mo. 483, 211 S. W. 11, 14; Simpson v. Lehmann, supra. Such title as Mary Jane Herman possessed passed by her duly probated will. Those purchasing from her heirs at law acquired only the title her heirs took under the terms of the will. Under the evidence in this record, appellants, as remaindermen, are not estopped by any failure to record the will.

Respondent, however, contends that title to the south half of the described property did not pass under the will, because testatrix had conveyed it by deed in 1896 to her four Mizell grandchildren. Since respondent claims title to this part of the property by conveyances from these grantees, who attempted to convey the whole title, he does not claim under the will, but adversely to it. See, Simms v. Thompson, 291 Mo. 493, 236 S. W. 876, 882.

The alleged deed of January 25, 1896 was recorded long prior to the execution and probate of the will and its delivery and acceptance will be presumed. Burkey v. Burkey (Mo. Sup.), 175 S. W. 623; Jones v. Jefferson, 334 Mo. 606, 66 S. W. (2d) 555; Chambers v. Chambers, 227 Mo. 262, 284, 127 S. W. 86.

Appellants contend that this deed is so vague, indefinite and uncertain that it was wholly ineffectual to pass title; that "its very language is self-destructive"; that it is testamentary in character and void; and that the will operated on "the entire title to all the property." Appellants rely on Goodale v. Evans, 263 Mo. 219, 223, 229, 172 S. W. 370; Thorp v. Daniel, 339 Mo. 763, 99 S. W. (2d) 42; and cases therein cited.

334

In construing the deed we are governed by certain well established rules of law. The intention of the grantor, as expressed in the deed, is the controlling factor in determining whether or not the deed is testamentary in character. If it appears from the provisions of the deed that the grantor intended to convey a present interest to the grantees, the deed will be given effect, even though the grantor may have reserved a right to the possession of the property during her life. A deed should be construed most strongly against the grantor, and in favor of the grantees. Bray v. Conrad, 101 Mo. 331, 13 S. W. 957. If the deed is susceptible of two constructions, one of which will render the deed valid and the other inoperative, the construction, if not unreasonable or impossible, should be adopted which will render the deed operative. Hobbs v. Yeager (Mo. Sup.), 263 S. W. 225, 229. ''The intention of the parties as gathered from the entire instrument, together with the surrounding ▆▆▆ circumstances, shall be ascertained and given effect, unless in conflict with some positive rule of law, or repugnant to the terms of the grant itself, and that in gathering such intention from the instrument the court will ignore technical distinctions between the various parts and seek the grantor's intention from them all.'' Welch v. Harvey, 281 Mo. 684, 219 S. W. 897, 898. Where certain words used in a deed appear repugnant to the other portion of the deed and to the general intention of the parties, they should be rejected. Gibson v. Bogy, 28 Mo. 478, 479; Rutherford v. Tracy, 48 Mo. 325, 327; 16 Am. Jur., Deeds, Sec. 171, p. 535, 26 C. J. S., Deeds, 90 (c), p. 337.

Appellants concede that the deed of January 25, 1896 ''could not be both void and in force at the death of the grantor.'' The words, ''this deed only to be void . . . at my death,'' assume a valid deed conveying a present interest and so do the words of reservation contained in the deed, ''the said land to remain in my possession.'' The filing of the deed for record was further evidence of the grantor's intention to make a present conveyance. Priest v. McFarland (In Banc), 262 Mo. 229, 239, 171 S. W. 62. On the other hand, the words, ''this deed only to be . . . in force at my death,'' indicate a testamentary disposition with no present transfer of title. Thorp v. Daniels, supra. It is apparent that the clause, ''this deed only to be void and in force at my death,'' cannot be given effect. The clause is ambiguous, meaningless, and the terms used are repugnant to each other and to the remainder of the deed. But the ambiguous and contradictory clause is preceded by a granting clause that is clear, definite and certain and it is followed by a habendum clause in entire harmony with the granting clause. Welch v. Harvey, supra. It cannot be said that the ambiguous clause evidences a manifest purpose that no immediate estate was intended to be created in the grantees by the deed. Christ v. Kuehne, 172 Mo. 118, 126, 72 S. W. 537. Considering the deed as a whole, with all of its provisions, and giving ef-

fect to all, so far as possible, we think that the deed clearly evidences an intention on the part of the illiterate grandmother to presently transfer the title to this 50 acres of land to her four infant Mizell grandchildren, with a reservation of possession in herself until death. This intention, evidenced by the deed, should and must be given effect. McAlister v. Pritchard, 287 Mo. 494, 230 S. W. 66; Wimpey v. Ledford (Mo. Sup.), 177 S. W. 302; Dawson v. Taylor (Mo. Sup.), 214 S. W. 852; O'Day v. Meadows, 194 Mo. 588, 614, 92 S. W. 657. Mary Jane Herman having parted with both possession and title to the south 50 acres in her lifetime, her will did not operate to pass title to this tract.

■ Does respondent have title to the remainder of the property by reason of adverse possession for the period provided by Sections 1002 and 1004, R. S. 1939 (the 10 and 24 year statutes)? It is conceded that, unless the statutes began to run during the lifetime of Mary Jane Herman, they did not run against the remaindermen until the death of the several life tenants. Appellants concede that the Wilkins heirs occupied the north half of the described property from and after the marriage of Mary Jane Herman in 1893, until they sold it in 1915-1917, but appellants insist "that such possession was permissive, and under a mere license to occupy the land, rent free, by reason of the relationship and the circumstances surrounding the parties." Appellants further point to the decree quieting the title in Mary Jane Herman in 1904, to the making of the will, dated February 23, 1905, to the relationship of the parties, to the fact that Anna Wilkins, the daughter, probated the will in 1907, to the exchange of deeds by the legatees in possession of the respective tracts, and to the fact that there was no pleading of title by parol gift and no offer of clear, cogent or convincing evidence to support such a plea. There is no issue of title by parol gift. The issue is adverse possession. Reader v. Williams (Mo. Sup.), 216 S. W. 738. Respondent relies on Moore v. Hoffman, 327 Mo. 852, 39 S. W. (2d) 339, 344; Reader v. Williams, supra; Kirton v. Bull, 168 Mo. 622, 632, 68 S. W. 927, 929, and other cases. It will be unnecessary to review the evidence favorable to respondent on this issue. While the exclusive possession of this part of the property from 1893 to 1907, the enjoyment of its rents and profits, the payment of taxes, and the testimony concerning declarations of the prior owner and of a subsequent possessor-claimant (evidencing the character of possession) constitute some evidence from which both a parol gift or relinquishment of title by the grandmother to her daughter and grandchildren and their adverse possession of the property ■ might be inferred, we think the evidence, considered as a whole, is insufficient to authorize or justify a finding that Anna Wilkins and her children held adversely to Mary Jane Herman in her lifetime. Hubbard v. Hubbard, 140 Mo. 300, 303, 41 S. W. 749. Accordingly, we hold that title to the north half of the described property passed under the will of Mary Jane Herman.

 The will provided: "Should either of the above named legatees die without issue then his or her share *to go to the other heirs living in equal parts.*" (Italics ours.) The question is who took the 1/7 interest upon the death of Walter Mizell without issue. The provision meant either that the other named devisees living at the death of a life tenant should take or that all of the heirs of testatrix living at the death of a life tenant should take. Not all of the "named legatees" were heirs of the testatrix at her death. Wilkins children were not heirs, their mother was living when their grandmother died. While the named devisees are referred to, supra, as "named legatees," the word "heirs" is used in designating the beneficiaries if a life tenant died without issue. The intention of the testatrix as evidenced by the will controls. St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S. W. (2d) 578; Sec. 568, R. S. 1939. The words used do not warrant a holding that the other surviving original heirs of the testator or that the other surviving named devisees was intended. We think the words, " the other heirs living," must be construed to mean the heirs of the testatrix as of the date the event happened.

 Appellants, as co-tenants with respondent since the death of the several life tenants under whom the respective appellants claim, claim an equitable off-set (against taxes and special assessments paid and improvements made by the respondent) to the extent of their proportionate shares of rents and profits, for the several years involved, and regardless of whether respondent had notice of their claims or whether recovery for such rents and profits would be barred by the five year statute of limitations. Byrne v. Byrne, 289 Mo. 109, 233 S. W. 461, 466. Error is assigned on the court's failure to grant such an accounting.

The parties agree that, if appellants have an interest in the described lands, an accounting of rents and profits under Section 1541, R. S. 1939 may be had as an off-set against the value of the improvements made by respondent in good faith without notice of appellants' claims, but respondent insists that appellants are not entitled to the *equitable* off-sets, as claimed, because no such issue was raised by the pleadings. Appellants denied generally the allegations of respondent's action for an equitable lien, and respondent insists that a cross demand should have been pleaded. Respondent further contends that there is no evidence of rental value without the improvements made by respondent. Byrne v. Byrne, supra (233 S. W. 461, 465) ; Armor v. Frey, 253 Mo. 447, 449, 161 S. W. 829.

It will be unnecessary to rule the issues raised by respondent because additional evidence is necessary to the accounting which is otherwise required to be made and the objections urged may be avoided upon a new trial. Adams v. Adams, 350 Mo. 152, 165 S. W. (2d) 676. If the improvements are located on the south 50 acres no issue of equitable off-set can arise.

It is admitted that respondent in good faith and prior to notice of appellants' claims made improvements of the present value of $3600, but the location of the improvements, with reference to the particular real estate in which we have held that appellants have an interest, does not appear.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.